OPINION
ROTH, Circuit Judge:
Paul Leendertz, father of the minor child at issue in this proceeding, appeals the District Court’s grant of a petition filed by the mother, Marina Karpenko, for the child’s return under the Hague Convention on the Civil Aspects of International Child Abduction. For the following reasons, we will affirm the grant of Kar-penko’s petition and order the minor child’s immediate return to her mother in the Netherlands.
I. Background
This action follows a long, bitter dispute between Leendertz and Karpenko over custody of their minor child, E.L., born in Pennsylvania in 2001. Leendertz and Kar-penko were married at the time of E.L.’s birth, but separated in 2002 and officially divorced in 2007. In September 2002, the Pennsylvania Court of Common Pleas issued an order incorporating a Custody Stipulation executed by the parties which provided that (1) Karpenko would obtain primary physical custody and live with E.L. in the Ukraine, Karpenko’s native country; and (2) Leendertz would have regular visitation rights to be arranged in the Ukraine, the Netherlands, or the United States. Leendertz has family in the Netherlands and, as a commercial pilot, is able to visit the Netherlands.
Karpenko initially moved with E.L. to the Ukraine, but at Leendertz’s request, she relocated to Ede, Netherlands. E.L. arrived in the Netherlands at age two and began attending Dutch public school at age four. E.L. has numerous Dutch friends and socializes with Karpenko’s relatives in the Netherlands. E.L. learned Dutch as her primary language and became immersed in Dutch culture.
Although Karpenko’s relocation from the Ukraine to the Netherlands was ostensibly to accommodate Leendertz, Karpen-ko refused to allow full visitation in accordance with the court-ordered Custody Stipulation. In 2007, following further deterioration of relations, Karpenko moved to a new location in Ede, Netherlands, and refused to provide Leendertz with her address or phone number. In 2008, both parties filed petitions for sole physical and legal custody: she in the Dutch District Court of Arnhem, he in the Pennsylvania Court of Common Pleas. The Dutch court stayed Karpenko’s petition pending a decision by the Pennsylvania court.
By Order of May 20, 2009, the Pennsylvania Court of Common Pleas granted sole custody of E.L. to Leendertz. That order purports to (1) transfer sole legal and primary physical custody to Leendertz; (2) grant Leendertz “sole authority to apply for and obtain a United States passport for the minor child without Mother’s consent or authorization and without any further notice to Mother;” (3) grant Leendertz authority to “obtain custody of the child at any place that she may be found, whether in the United States or any other country” without any further proceedings; (4) grant *262 Leendertz and his sister authority “to pick up the child at her school or any location;” (5) award Karpenko visitation rights “as she and the Father may agree;” and (6) adjudge Karpenko in civil contempt for willfully violating prior court orders. Kar-penko appealed and the Pennsylvania Superior Court affirmed.
In the Netherlands, a foreign order is not enforceable until domesticated by a Dutch court. Dutch Civil Code, Title 9, Article 985, et seq. However, rather than reducing the May 20, 2009, Order to a domestic judgment under Dutch law, Leendertz arranged to seize E.L. in the Netherlands and return with her to Pennsylvania without notice to Karpenko or the Dutch court presiding over the custody proceeding there. On May 27, 2009, Leen-dertz located E.L. on the sidewalk outside her school in the Netherlands. With the help of an unidentified third party, Leen-dertz placed E.L. in a car and drove her to Germany, where they flew to Dubai and ultimately the United States. Dutch authorities issued an Amber Alert within minutes of E.L.’s removal. By Order of May 29, 2009, a Dutch court ruled that (1) at the time of E.L.’s removal, Karpenko and Leendertz had joint custody under Dutch law; (2) Leendertz acted unlawfully by removing the child without Karpenko’s permission; and (3) Leendertz shall immediately return E.L. to Karpenko. Leen-dertz refused to comply with the Dutch Order and currently resides with his new wife and E.L. in Northampton, Pennsylvania.
On July 20, 2009, Karpenko filed the instant petition for return of E.L. under the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted, in 51 Fed.Reg. 10, 494 (1986) (Hague Convention), as codified by the International Child Abduction Remedies Act, 42 U.S.C. § 11601, et seq. (ICARA). Karpenko claims she is entitled to the immediate return of her daughter because Leendertz wrongfully removed her from the Netherlands to the United States.
The District Court for the Eastern District of Pennsylvania granted Karpenko’s petition for E.L.’s return on March 3, 2010. To avoid potentially relocating E.L. multiple times during the pendency of this proceeding, however, the District Court stayed enforcement of its Order pending appeal. Leendertz appeals the District Court’s grant of Karpenko’s Hague Convention petition. Karpenko cross-appeals the District Court’s entry of the stay.
II. Jurisdiction and Standard of Review
The District Court properly exercised jurisdiction under 42 U.S.C. § 11603(a), which confers United States district courts with original jurisdiction over actions arising under the Convention.[1] We have jurisdiction under 28 U.S.C. § 1291.
We review the District Court’s factual findings for clear error. Factual *263 findings will be upheld so long as the District Court’s “account of the evidence is plausible in light of the record, even if ... we would have weighed the evidence differently.” Yang v. Tsui, 499 F.3d 259, 270 (3d Cir.2007). Conclusions of law are reviewed de novo. Id.
III. Discussion
The Hague Convention, Article 1, sets forth its two primary objectives: “(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.” The Hague Convention does not provide a forum to resolve international custody disputes, but rather it provides a legal process “to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases.” Yang, 499 F.3d at 270. The United States and the Netherlands are State signatories to the Convention.
Under the Hague Convention, the petitioner bears the initial burden of proving by preponderance of the evidence that the child was habitually resident in a State signatory to the Convention and was wrongfully removed to a different State as defined by Article 3.[2] Karkkainen v. Kovalchuk, 445 F.3d 280, 287 (3d Cir.2006). “[A] child’s habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child’s perspective.” Id. at 291-92. In Yang, we divided the analysis of the petitioner’s burden into four parts:
A court must determine (1) when the removal or retention took place; (2) the child’s habitual residence immediately prior to such removal or retention; (3) whether the removal or retention breached the petitioner’s custody rights under the law of the child’s habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention.
499 F.3d at 270-71. Once the petitioner meets its initial burden, the respondent may opp'ose the child’s return by proving one of five affirmative defenses.[3]
The District Court held an evidentiary hearing, after which it issued the following *264 factual findings and legal conclusions: E.L. was removed on May 27, 2009, from her habitual residence in the Netherlands.[4] Karpenko had custody at the time of removal because, under Dutch law, divorced parents retain joint custody until a Dutch court rules otherwise; there was no severance of joint custody by a Dutch court as of May 27, 2009, a point conceded by Leen-dertz’s expert on Dutch law. Karpenko was exercising her custody rights at the time of removal because she was actively involved in E.L.’s daily life. By removing E.L., Leendertz breached Karpenko’s custody rights under Dutch law because he resorted to an extreme form of self-help, “a snatch and run,” rather than registering the Pennsylvania court’s May 20, 2009, Order in the Netherlands as required by Dutch law. Leendertz failed to carry his burden of establishing his affirmative defense, i.e., that granting the petition would pose a grave risk of physical, sexual, or psychological abuse upon E.L.’s return.
Leendertz argues that the District Court’s factual findings are clearly erroneous. We disagree. Leendertz’s claims of error do not leave us with a firm conviction that any of the factual findings are mistaken. For example, Leendertz argues that the District Court failed to consider the parties’ settled parental intent regarding the child’s location in its analysis of habitual residence. As “critical” evidence of settled parental intent that E.L. would reside in the United States, Leendertz relies on a February 28, 2002, custody agreement which purports to stipulate E.L.’s habitual residence to be the United States. Even assuming it were possible for parents to contractually stipulate a child’s habitual residence, Leendertz’s reliance on the February 28, 2002, agreement is misplaced. That stipulation was vacated when the Pennsylvania court adopted the parties’ subsequently executed Custody Stipulation on September 19, 2002. The September 19, 2002, Custody Stipulation states that E.L. would reside in the Ukraine.
In another claim of purported error, Leendertz argues the District Court disregarded evidence that his conduct complied with Dutch and American law “[a]t all times,” and therefore he did not breach Karpenko’s custody rights by removing E.L. from the Netherlands. Leendertz contends he was legally entitled to rely on the Pennsylvania court’s May 20, 2009, Order when he seized E.L. outside her school in the Netherlands. However, that Order purports to exercise power authorizing conduct by Leendertz on foreign soil— in particular, a “snatch and grab,” as accurately characterized by the District Court. A Pennsylvania state court lacks jurisdiction to authorize such conduct; therefore, the Pennsylvania court’s May 20, 2009, Order was a nullity in the Netherlands until domesticated by a Dutch court. On May 29, 2009, a Dutch court ruled that Leendertz acted unlawfully by removing the child without Karpenko’s permission. These facts support the District Court’s finding that Leendertz breached Karpenko’s custody rights.
*265 We conclude that the District Court’s findings of fact were not clearly erroneous. We agree with the District Court’s ultimate assessment: “Under no authority was the Father authorized to snatch the child from her school in the manner he did.”
At oral argument, a member of this panel posed a novel question which was not raised or briefed by the parties or considered by the District Court: Should this Court exercise its equitable power to deny relief under the Hague Convention because Karpenko filed this petition with unclean hands? The doctrine of unclean hands, named for the equitable maxim that “he who comes into equity must come with clean hands,” “is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.” Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The doctrine may be raised sua sponte, Highmark, Inc. v. UPMC Health Plan, 276 F.3d 160, 174 (3d Cir.2001); the question then is whether its application is appropriate here.
Karpenko’s conduct in the Netherlands was decidedly not commendable; it was wrong for her to interfere with Leendertz’s visitation rights and to refuse to disclose the child’s new address after relocating. But we are not aware of any authority that would support dismissal of a Hague Convention petition on grounds of unclean hands.[5] The language of the Hague Convention, and of ICARA which implements it, demonstrates that their purpose is to protect the well-being of children. The Convention’s preamble emphasizes that “the interests of children are of paramount importance in matters relating to their custody” and expresses a desire to protect children from the harms caused by wrongful removal. Hague Convention, preamble. The conduct of the parents, other than the claim of abduction or retention, is not mentioned in the Hague Convention except to the extent that that conduct may be relevant to one of the affirmative defenses. Moreover, article 19 of the Convention provides that a decision to return a child under the Convention is not a determination on the merits of custody. Custody is to be decided by a court of the child’s “habitual residence.” The purpose of the Convention is to safeguard the child by discouraging kidnapping in connection with custody disputes.
We conclude that application of the unclean hands doctrine would undermine the Hague Convention’s goal of protecting the well-being of the child, of restoring the status quo before the child’s abduction, and of ensuring “that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.” Hague Convention, art. 1(b).
Furthermore, wrongful removal of a child is most likely to occur when strained relations between parents are at their worst. As part of the irresponsible behavior that may accompany such strained relations, one or both parents may interfere with the other’s custody rights. The *266 Hague Convention discourages parents from resorting to the most extreme form of interference, child abduction, by providing a judicial remedy for removal. If relief for abduction were unavailable to parents with allegedly unclean hands, the well-being of the abducted child, which is a main purpose of the Hague Convention, would be ignored. There would be no remedy to prevent a cycle of abduction and re-abduction, an outcome which would inflict needless harm on vulnerable children.
As we have mentioned, a petitioner’s prior conduct may be relevant to determining whether relief should be granted, but such conduct does not destroy eligibility to file a claim under the Hague Convention. Once a petition is filed, the court will consider the petitioner’s prior conduct in the context of the respondent’s affirmative defenses, such as an assertion that returning the child would pose a grave risk of harm. The affirmative defenses allow consideration of those aspects of the petitioner’s conduct which directly relate to the child’s wellbeing. Here, Leendertz did raise the affirmative defense of physical or psychological harm to the child. The District Court found for Karpenko on this issue. In addition, any irresponsible conduct by either party will be a consideration by the proper court in future custody proceedings.
Moreover, when considered against the facts of this case, we can see how inappropriate the doctrine of unclean hands would be because Leendertz engaged in precisely the type of conduct that the Hague Convention was designed to deter. Leendertz brazenly violated Dutch law when he snatched his daughter from school and ran with her from Germany to Dubai to the United States. Dutch authorities responded by issuing an Amber Alert, much the way American authorities would respond if such illegal conduct were to be committed in the United States.
If Leendertz had simply followed the procedures under Dutch law to domesticate the Pennsylvania court’s May 20, 2009, Order, the Dutch court would have had the opportunity to consider this claim of custody. In 2008, when the parties filed separate custody petitions in the United States and the Netherlands, the Dutch court stayed Karpenko’s custody proceeding pending a ruling by the Pennsylvania court rather than granting Karpenko custody in Leendertz’s absence. The Dutch court’s handling of the case demonstrates its willingness to consider Leendertz’s interests and the Pennsylvania court’s decision. By resorting to self-help, Leendertz foreclosed an opportunity to perfect a claim to custody. We conclude that the doctrine of unclean hands does not bar Karpenko’s pursuit of statutory remedies under the Hague Convention to restore the status quo before E.L.’s abduction.
IV. Conclusion
For the above stated reasons, we will affirm the District Court’s Order, granting Karpenko’s petition under the Hague Convention, lift the stay of enforcement of that Order so that E.L. may be returned to the Netherlands immediately, and dismiss Karpenko’s cross-appeal of the stay as moot.

. The District Court properly rejected Leen-dertz’s arguments for abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), because these matters, raised in this federal court action, were never raised in the Pennsylvania state court custody proceeding. See Yang v. Tsui, 416 F.3d 199, 202 (3d Cir. 2005). By its own terms, a proceeding under the Hague Convention is distinct from determinations of custody, Hague Convention, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.”), so the pendency of custody proceedings in state court supplies no reason for a federal court to abstain from adjudicating a Hague Convention petition.

. Article 3 of the Convention provides:
The removal or the retention of a child is to be considered wrongful where—
a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

. The affirmative defenses require the respondent to prove (l)that a grave risk that the child's return would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation by clear and convincing evidence; (2) that the child’s return would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms by clear and convincing evidence; (3) that the child is now settled in his or her new environment by preponderance of the evidence; (4) that the person from whom the child was removed was not exercising custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention by preponderance of the evidence; or (5) that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views by preponderance of the evidence. 42 U.S.C. § 11603(e)(2).

. The District Court explained its holding on habitual residence as follows:
The child moved with the Mother to the Netherlands when she was only two years old. The child has lived in the Netherlands with the Mother for the past six years. At the time she was removed, the child was attending school in the Netherlands where she has numerous friends. Her primary language is Dutch and she was fully involved in all aspects of daily and cultural life in the Netherlands. There can be no doubt that the Netherlands, not the United States, is the place where she has been physically present from the age of two until she was removed at the age of eight and which held a degree of settled purpose from the child’s perspective.

. Our sister court has exercised inherent equitable power to deny relief in the analogous but distinct context of fugitive disentitlement, which “limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States,” Prevot v. Prevot, 59 F.3d 556, 562 (6th Cir. 1995) (Hague Convention petition dismissed because petitioner was a fugitive in the United States), but fugitive disentitlement does not apply to Karpenko's conduct here.