**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2277
_____

HUGO ARISTOTELES CASTELLANOS MONZON,

Appellant

v.

INGRID FABIOLA DE LA ROCA

_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Case No. 3:16-cv-00058)
District Judge: Hon. Freda L. Wolfson
_____

Argued March 6, 2018
_____

Before: McKEE, AMBRO, and RESTREPO, *Circuit Judges*.

(Filed: December 7, 2018)


John M. Boehler, Esq. [ARGUED]
Rutgers Law Associates
123 Washington Street
Suite 203
Newark, NJ 07102

*Counsel for Appellant*

Dorothy A. Hickok, Esq.
Mark D. Taticchi, Esq.  [ARGUED]
Drinker Biddle & Reath
One Logan Square
Suite 2000
Philadelphia, PA 19103

James C. Jones, Esq.
Drinker Biddle & Reath
105 College Road East
P.O. Box 627, Suite 300
Princeton, NJ 08542

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____


McKEE, *Circuit Judge*.

Hugo Castellanos Monzón[1] appeals the District Court's denial of the Petition he filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention")[2] and the International Child Abduction Remedies Act ("ICARA"),[3] seeking the return of his minor child, H.C.  Subject to certain exceptions, both the

---

[1] Inasmuch as the transcripts establish that Appellant refers to himself simply as "Hugo Castellanos," we will refer to him as "Castellanos."

[2] Oct. 25, 1980, T.I.A.S. No. 11670, 22514 U.N.T.S. 98 [hereinafter Hague Convention].

[3] Codified at 22 U.S.C. §§ 9001-9008, 9010-9011.

Convention[4] and ICARA[5] mandate the return of a child to the custodial parent when the other parent wrongfully removes or retains the child in violation of the requesting parent's custody rights. For the reasons that follow, we will affirm.[6]

## I.

### A. Factual Background

Castellanos married Appellee De La Roca in 2004. Their son, H.C., was born in 2010. The couple separated shortly thereafter in November 2011, and formally divorced by mutual consent in January 2014.

Castellanos and De La Roca have divergent narratives regarding their separation and divorce. De La Roca claims that violence was a factor. Although she did not raise that issue in the divorce proceedings,[7] she now claims that she feared for her safety during the relationship. Responding to Castellanos's Petition for H.C.'s return, she claimed that Castellanos verbally and physically threatened her by speeding and driving recklessly while she was pregnant and a passenger in his car. She also claimed that Castellanos attempted to visit H.C. more often than the couple had agreed to after their separation when she became H.C.'s primary guardian. According to De La Roca, this resulted in arguments between her and Castellanos. De La Roca claims that Castellanos showed up at her home late at night, approached her, threatened to kill himself, and

---

[4] Article 1 of the Convention sets forth two primary objectives: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Karpenko v. Leendertz*, 619 F.3d 259, 263 (3d Cir. 2010) (quoting Hague Convention, *supra* note 2, at art. 1).

[5] ICARA serves in the United States as the implementing statute for the Convention.

[6] On August 30, 2018, we entered an order granting panel rehearing and vacating the order and nonprecedential opinion which we initially filed in this matter.

[7] *Monzon v. De La Roca*, No. 16-0058, 2016 WL 1337261, at *2 (D.N.J. Apr. 5, 2016).

3

demanded H.C. Castellanos categorically denies all of De La Roca's allegations of abuse.

### 1. De La Roca's New Relationship and Ties to the U.S.

In the summer of 2013, after her separation from Castellanos, but before they divorced, De La Roca began a long distance relationship with her childhood acquaintance, "Deleon," who resided in New Jersey. De La Roca testified that she obtained a visa for H.C. to travel to the United States with Castellanos's consent, though she did not immediately bring H.C. to the U.S. Instead, she took several trips to visit Deleon by herself. However, she eventually traveled to New Jersey and married him in March of 2014. She did not tell Castellanos about the marriage.

Shortly after marrying Deleon, De La Roca told Castellanos that she intended to bring H.C. to the United States to live; Castellanos refused to consent. In or around March of 2014, De La Roca filed a domestic violence complaint against Castellanos in Guatemala and obtained a temporary restraining order. However, she failed to appear at the hearing to make the TRO permanent because she had already moved to New Jersey before the final hearing.

In July of 2014, De La Roca took H.C. to the United States. She testified that she decided to ignore Castellanos's denial of consent because she "could not explain to [her] aggressor that [she] was leaving."[8] A month after taking H.C. to New Jersey, she sent Castellanos a text message informing him she was there with H.C. She did not disclose their exact address "[o]ut of fear that he would come [to New Jersey] to do the same thing as in Guatemala."[9]

### 2. Castellanos's Efforts to Invoke the Convention

On August 23, 2014, Castellanos filed an Application for Return of the Child under the Convention with the Central

---

[8] *Id.* at *4.

[9] *Id.*

4

Authority in Guatemala. The Guatemalan Authority forwarded that application to the United States Department of State. About 16 months later, on January 5, 2016, having discovered that the Convention required him to file where H.C. lived, Castellanos filed the instant Petition for Return of the Child (the "Petition") in the District Court of New Jersey.

**B.     Legal Background**
### 1. The Hague Convention on Civil Aspects of International Child Abduction

Article 1 of the Convention has two primary objectives: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."[10] The Convention requires that the petitioner seeking return of the child bear the initial burden of showing that the child was habitually resident in a State signatory to the Convention and was wrongfully removed to a different State, as defined by Article 3.

Where a court determines a child has been wrongfully removed, Article 12 of the Convention provides that the child is to be returned "forthwith," *as long as* the proceedings have been "commenced" in the "judicial or administrative authority of the Contracting State where the child is" less than one year before the date of wrongful removal.[11] But where the petitioner fails to commence the proceedings before the one-year deadline, s/he is no longer entitled to the child's automatic return. Instead, a rebuttable presumption arises whereby the child's return is subject to certain affirmative defenses, including demonstration that "the child is now settled in its new environment."[12]

The Convention sets out a total of five defenses to a Contracting State's duty to return the child. The first is the one

---

[10] *Karpenko*, 619 F.3d at 263 (quoting Hague Convention, *supra* note 2, at art. 1).
[11] Hague Convention, *supra* note 2, at art. 12.
[12] *Id.*

5

just mentioned: where the child is well settled in his or her new environment.[13]   A second exception applies where the petitioner was not exercising custody rights at the time of the child's wrongful removal or retention, or acquiesced in the removal or retention.[14]  A third exception applies where "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."[15]  There is a fourth exception if the child objects to being returned and has "attained an age and degree of maturity at which it is appropriate to take account of [the child's] views."[16]  The fifth and final exception is where "[t]he return of the child . . .  would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms."[17]  Significantly, the Convention establishes neither the degree of certainty nor the burden of proof that a respondent must establish to defeat the petition and retain custody of the child pursuant to these affirmative defenses.[18]

## 2. The International Child Abduction Remedies Act ("ICARA")

Congress enacted ICARA to implement the Convention.[19]  Under ICARA, "the petitioner bears the initial burden of proving by a preponderance of the evidence that the child was . . . wrongfully removed."[20]  "Once the petitioner

---

[13] *Id.*

[14] *Id.* at art. 13a.

[15] *Id.* at art. 13b.

[16] *Id.* at art. 13.

[17] *Id.* art. 20.  Only the first (well-settled defense) and the third (grave risk defense) of these listed defenses are relevant to this case since they were the only defenses De La Roca made in response to the Petition.

[18] *See infra* Part III(A)(2) for a discussion of ICARA provision 22 U.S.C. § 9003(e)(2) and its explanation of burdens of proof for the exceptions.

[19] *See, e.g.*, *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995).

[20] *Karpenko*, 619 F.3d at 263.  In particular, a court must determine "(1) when the removal or retention took place; (2) the child's habitual residence immediately prior to such

meets its initial burden, the respondent may oppose the child's return by proving one of [the] five affirmative defenses" as listed under ICARA provision 22 U.S.C. § 9003(e)(2)(A) and (B).[21]  Section 9003(e)(2) provides:

> **(e) Burdens of proof**
>
> . . .
>
>> **(2)** In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing—
>>
>>> **(A)** by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; *and*
>>> **(B)** by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.[22]

Congress specifically required that these affirmative defenses be "narrowly construed to effectuate the purposes of the Convention."[23]  Moreover, because of the very important policy objectives of the Convention and ICARA, courts retain the discretion to order the child's return.  Thus, "even where a defense applies, the court has the discretion to order the child's return."[24]

### C. Procedural Background

On January 5, 2016, Castellanos filed the Petition for the return of H.C. with the United States District Court of New Jersey.  Thereafter, the District Court held two days of

---

removal or retention; (3) whether the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention."

[21] *Id.*

[22] 22 U.S.C. § 9003(e)(2) (emphasis added).

[23] *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 263, 271 (3d Cir. 2007) (internal citations omitted).

[24] *Id.*

hearings,[25] which included the testimony of Castellanos, De La Roca, and two expert witnesses who testified on her behalf.[26] The first of those witnesses was Victoria Sanford, Ph.D., an expert on domestic violence against women and children in Guatemala. She testified about "the police structure and government of Guatemala City."[27] The second witness was Robert T. Latimer, M.D., a psychiatric expert who interviewed H.C. at the start of the court case.[28]

After considering the evidence and the parties' post-hearing submissions, the District Court entered judgment in favor of De La Roca, thereby refusing to return H.C. to Castellanos. However, the Court expressly declined to address De La Roca's affirmative defense under Article 13b (H.C.'s return to Guatemala constitutes a "grave risk").[29] Instead, the Court concluded that De La Roca had successfully demonstrated by a preponderance of the evidence, that H.C. was well settled in the United States pursuant to ICARA,[30] and

---

[25] *Monzon*, 2016 WL 1337261, at *1. Here, the District Court expressly declined to exercise its discretion to order H.C.'s return because it found that De La Roca had credibly testified that H.C. had become "well settled" in the U.S. *Id.* at *10 ("Respondent has established by a preponderance of the evidence that H.C. is settled in the United States and . . . I will not exercise my discretion to order H.C.'s return."); *Id.* at *15 ("Although the Court expressly declines to address the parties' arguments concerning whether returning H.C. to Guatemala constitutes a 'grave risk' to H.C., nonetheless, in light of the testimony received from Dr. Sanders concerning how familial domestic violence is skewed unfairly against women by the culture and authorities in Guatemala, and Respondent's testimony concerning her fear of Petitioner, both of which I find credible, I will not exercise my discretion to order the return of H.C. to Guatemala during the pendency of any future custody determinations.").

[26] *Id.* at *1.

[27] *Id.* at *8.

[28] *Id.* at *9.

[29] *Id.* at *15.

[30] *Id.* at *10, *13; 22 U.S.C. § 9003(e)(2)(B) (corresponding to Hague Convention, *supra* note 2, at art. 12).

8

therefore decided not to exercise its independent authority to order H.C.'s return to Guatemala.

## II. <u>DISCUSSION</u>

Castellanos makes three arguments on appeal. He argues that the District Court erred in not finding that the notice he filed with the Guatemalan Central Authority and the U.S. Department of State constituted a "proceeding" for purposes of Article 12 of the Convention, thereby entitling him to have H.C. returned pending resolution of the custody dispute. Castellanos also claims the District Court erred in interpreting De La Roca's burden under ICARA.[31] Finally, he claims the District Court erred in finding that H.C. was "well settled" in the United States, and thereby denying H.C.'s return to Guatemala.

### A.

Castellanos contends the District Court should have considered the application he initially filed with the Guatemalan Central Authority and the U.S. Department of State as a "proceeding" under ICARA. He insists that by filing that notice when he first learned of H.C.'s removal, he acted "diligently" and "in accordance with the established methods of international communication between [U.S. and Guatemalan] Central Authorities."[32] He argues that he was "unable to overcome the language barrier, the lack of access to affordable legal representation, and certainty as to H.C.'s residence."[33] He therefore asserts that the resulting delay should not be attributed to him, and the "petition date" should therefore be the first of either a judicial filing or an application to the Central Authority, for purposes of the Convention.[34]

ICARA defines "commencement of proceedings" as used in Article 12 of the Convention as "the filing of a petition in accordance with [§ 9003(b)]."[35] Section 9003(b) provides,

---

[31] Appellant's Br. 9.
[32] *Id.* at 22.
[33] *Id.* at 22–23.
[34] *Id.* at 23.
[35] 22 U.S.C. § 9003(f)(3).

9

in turn, that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the relief sought *in any court which has jurisdiction of such action* and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."[36] Accordingly, we cannot conclude that mere notice of one's intent to have a child returned to the parent in a signatory state constitutes "commencement of proceedings" under Article 12.

We realize that Castellanos tried to act diligently, and we are not unsympathetic to his efforts. Nevertheless, our inquiry into what constitutes a proper filing for these purposes is circumscribed by the language of ICARA and the Convention. We cannot ignore that language by extending it to include a document filed with either the Guatemalan Central Authority or the U.S. Department of State.[37] If a parent pursues the remedies available for the return of his/her child under ICARA, Congress has clearly required that the parent do so by "filing a petition . . . in [a] court . . . where the child is located."[38]

As noted earlier, the timing of any such filing is crucial. When a child has been removed and "a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith."[39] Thus, at least one year must pass before a child can be considered sufficiently settled and no longer subject to automatic return to the other parent during the pendency of proceedings under the Convention and ICARA. "[I]f one year has elapsed since a child was wrongfully

---

[36] *Id.* at § 9003(b) (emphasis added).

[37] *See Monzon*, 2016 WL 1337261, at *11 (quoting 22 U.S.C. § 9003(b)) ("In this instance, Petitioner previously applied to Guatemala's Central Authority for assistance in securing the return of H.C. However, that application was neither a substitute, nor a prerequisite, for commencing 'proceedings before the judicial or administrative authority of the Contracting State where the child is.'").

[38] 22 U.S.C. § 9003(b).

[39] Hague Convention, *supra* note 2, at art. 12.

removed or retained when a petition is filed, a court must also determine whether the child is 'settled in its new environment.'"[40] Thus, "the 'now settled' exception only applies where the child has been in the destination state for more than one year from the date of the wrongful removal or retention."[41]

The delay in filing the Petition for H.C.'s return did not eliminate Castellanos's remedies under the Convention,[42] nor did it ensure De La Roca's success in resisting the Petition for H.C.'s return. Here, the District Court correctly recognized its continuing independent authority to order H.C.'s return; however, it declined to exercise this authority. The Court stated, "I will not exercise my discretion to order the return of H.C. to Guatemala during the pendency of any future custody determinations."[43] Concomitantly, even if Castellanos had properly filed his petition in the New Jersey District Court within a year of H.C.'s removal, the District Court still could have exercised its discretion and denied H.C.'s return pursuant to the terms of the Convention.[44] Therefore, although the one-year filing requirement is important, the late filing did not ultimately determine H.C.'s custody.[45]

## B.

When proceedings for a petition for the return of a child begin more than one year after the child's removal, the

---

[40] *Yang v. Tsui*, 416 F.3d 199, 203 n.4 (3d Cir. 2005) (quoting Hague Convention, *supra* note 2, at art. 12).

[41] *Hofmann v. Sender*, 716 F.3d 282, 295 (2d Cir. 2013) (holding that "[b]ecause one year had not elapsed between the wrongful retention of the children and the institution of these proceedings under the convention, the district court's determination that the 'now settled' exception does not apply must be affirmed.").

[42] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 14 (2014) (noting that "expiration of the 1–year period in Article 12 does not eliminate the remedy the Convention affords the left-behind parent—namely, the return of the child.").

[43] *Monzon*, 2016 WL 1337261, at *15.

[44] *See* Hague Convention, *supra* note 2, at arts. 13, 20.

[45] *See id.* at art. 12.

Convention requires that the court "shall order the return of the child," subject to specific affirmative defenses set forth in § 9003(e).[46] The petitioner has the initial burden of proving by a preponderance of the evidence that the child was wrongfully removed, whereupon "the respondent may oppose the child's return" by establishing the "affirmative defenses" or "exceptions" as listed under ICARA provision 22 U.S.C. § 9003(e)(2)(A) and (B).[47]

In *Tsai-Yi Yang*, we explained the "four questions that must be answered in a wrongful removal or retention case" are as follows:

> [We] must determine (1) when the removal or retention took place; (2) the child's habitual residence immediately prior to such removal or retention; (3) whether the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention.[48]

De La Roca does not dispute the District Court's conclusion that Castellanos established each of these four conditions for H.C.'s return under the Convention.[49] Accordingly, De La Roca had to produce sufficient evidence to establish an

---

[46] *Id.*

[47] *Karpenko*, 619 F.3d at 263.

[48] *Tsai-Yi Yang*, 499 F.3d at 270–71.

[49] Specifically, the District Court held:

> Petitioner met his initial burden of presenting a prima facie case of wrongful removal and retention under the Convention, i.e., that (1) the removal took place on July 17, 2014; (2) H.C.'s habitual residence immediately prior to the removal was Guatemala; (3) Petitioner had custodial rights to H.C. at the time of H.C.'s removal from Guatemala; and, (4) Petitioner was exercising those custodial rights at the time of H.C.'s removal from Guatemala.

*Monzon*, 2016 WL 1337261, at *10.

12

affirmative defense to Castellanos's Petition pursuant to subsection (e)(2) of ICARA.

Recall that § 9003(e)(2) provides as follows:
**(e) Burdens of proof**
. . .
> **(2)** In . . . an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing--
>> **(A)** by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; *and*
>> **(B)** by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.[50]

Castellanos insists that the use of the conjunctive "and" means that De La Roca must establish both prongs of § 9003(e)(2) by the specified burden of proof before his Petition for H.C. could be denied.[51] He asserts with some force that Congress could have simply used the word "or" if it had intended for respondents to successfully resist a petition for return of a child by establishing only one affirmative defense under § 9003(e)(2).[52]

De La Roca asserted two affirmative defenses to the Petition—that H.C. is well settled in the United States, and that returning him to Guatemala would present a grave risk. Under (e)(2)(A), a respondent must prove by clear and convincing evidence that (1) there is a grave risk that the child's return would expose the child to physical or psychological harm;[53] or

---

[50] 22 U.S.C. § 9003(e)(2) (emphasis added).

[51] Appellant Br. 11.

[52] *Id.* at 12; *see Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (*per curiam*) (quoting *Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir. 1973)) (As a "general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately.").

[53] Hague Convention, *supra* note 2, at art. 13b.

(2) the return should not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.[54] ICARA requires that a respondent only establish by a preponderance of the evidence that (1) the child is now settled in its new environment;[55] or (2) the petitioner was not exercising custody rights at the time of removal.[56]

According to Castellanos, use of the conjunctive "and" requires a respondent under the Convention to establish defenses of either a grave risk or violation of fundamental principles *and* either that the child is now settled or that the petitioner was not exercising custody rights when the child was taken from the petitioner.[57]

Castellanos thus claims that the District Court's reading of ICARA ignored a "critical layer of protection" expressly embedded in the statutory scheme and undermined the overriding goals of ICARA and the Convention.[58]

1. **A Literal Reading of ICARA Produces an Absurd Result**

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon [of statutory construction] is also the last: 'judicial inquiry is complete.'"[59] Only when a statute is ambiguous and includes disputed language "reasonably susceptible to different interpretations" should a court go beyond interpreting the text of a provision.[60] Thus, Castellanos argues that the District Court here erred by prematurely ending its inquiry after

---

[54] *Id.* at art. 20.

[55] *Id.* at art. 12.

[56] *Id.* at art. 13a.

[57] Appellant Br. 13 (emphasis added).

[58] *Id.* at 18.

[59] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

[60] *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (quoting *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005)).

concluding that H.C. was well settled. According to him, "[t]he plain language of section 9003 (e)(2)(A) of ICARA requires that the respondent also prove, by clear and convincing evidence, that one of the exceptions set forth in article 13b or 20 of the Convention [also] applies."[61]

Castellanos's conjunctive reading of § 9003(e)(2) appears, at first glance, to be correct. Congress' use of the conjunctive certainly suggests that it intended to require respondents to present an affirmative defense under both § 9003(e)(2)(A) and its counterpart, § 9003(e)(2)(B), by the prescribed burdens of proof. However, the result of that literal reading not only contradicts the underlying principles of the Convention and ICARA, it produces a patently absurd result.[62]

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[63] Here, the broader context of the statute strongly suggests that the "and" in § 9003(e)(2) is misleading insofar as it means that Congress intended that both prongs need to be satisfied. "Statutory context can suggest the natural reading of a provision that in isolation might yield contestable interpretations."[64] Hence the Supreme Court's reminder that "[s]tatutory construction . . . is a holistic endeavor."[65]

Logic dictates that the text of the Convention and its discussion of the affirmative defenses be interpreted as establishing that Congress intended them to apply

---

[61] Appellant Br. 13 (citing 22 U.S.C.A. § 9003(e)(2)(A)).

[62] *See First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 403 (3d Cir. 1999) ("[O]nly absurd results and 'the most extraordinary showing of contrary intentions' justify a limitation on the 'plain meaning' of . . . statutory language.") (citing *Garcia v. United States*, 469 U.S. 70, 75 (1984)).

[63] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

[64] *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004).

[65] *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

individually.[66]   The State Department itself suggested in its (albeit pre-ICARA) legal analysis of the Convention that only one of the defenses need be shown.   Its analysis stated: "a finding that one or more of the [affirmative defenses] provided by Articles 13 and 20 are applicable does not make refusal of a return order mandatory. The courts retain the discretion to order the child returned even if they consider that one or more of the [defenses] applies."[67]

Moreover, the Convention clearly establishes that certain defenses can defeat a demand for repatriation, and they can do so without any additional showing.  Article 12 provides that the well-settled exception controls, even in the absence of other considerations that mitigate in favor of a petition for the return of the child.   It commands: "The judicial or administrative authority, even where the proceedings have been commenced after [the lapse of one year from the date of the child's wrongful removal], shall also order the return of the child, *unless it is demonstrated that the child is now settled in its new environment*."[68]   The Convention also includes what appears to be a standalone defense to a child's repatriation in Article 20: "[t]he return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms."[69]

---

[66] *See* Appellee Br. 16.

[67] Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01.  While the State Department's own understanding of the Convention is persuasive, it should be noted this particular analysis was not, in fact, contemporaneous with the passage of ICARA.  The former was published in 1986, whereas the latter was codified in 1988. Note, this discretion applies despite the one-year provision.

[68] Hague Convention, *supra* note 2, at art. 12 (emphasis added).

[69] *Id.* at art. 20.  In its public statement analyzing the Convention, the State Department offered what it characterized as its "best explanation" for Article 20's "unique formulation": that "the Convention might never have been adopted without it."  Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR

Castellanos's reading of § 9003(e)(2) would mean that even proof of an especially compelling defense could never, by itself, prevent a child's return under the Convention.[70] For example, even if it were proven by clear and convincing evidence the child faced a "grave risk . . . [of] physical or psychological harm"[71] upon return, or that return of the child would violate "fundamental principles . . . of human rights,"[72] a court would be powerless to deny return unless it *also* found that the child was settled in its new residence.

Our conclusion that the inclusion of "and" was not intended to suggest the conjunctive is not a cavalier attempt to reconcile inconsistences between ICARA and the Convention. Courts repeatedly resolve conflicts between treaties and Acts of Congress by the doctrine of implied repeal, with the latter in time prevailing; here, that is ICARA.[73] Thus, although federal

---

10494-01. The State Department specifically noted that the negotiating countries had been divided on the inclusion of Article 20, which it characterized as a "public policy exception in the Convention" allowing a court to excuse itself from returning a child "under some extreme circumstances not covered by the exceptions of Article 13." *Id.*; *see also Souratgar v. Lee*, 720 F.3d 96, 108 (2d Cir. 2013) ("The defense is to be invoked only on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process.") (internal citations and quotations omitted).

[70] *See Griffin v Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 515 (1989) ("Interpreting . . . literally would produce an absurd result, which the Legislature is strongly presumed not to have intended") (internal citations and quotations omitted).

[71] Hague Convention, *supra* note 2, at art. 13(b).

[72] *Id.* at art. 20.

[73] *See Reid v. Covert*, 354 U.S. 1, 18 (1957); *United States v. Enger*, 472 F. Supp. 490, 542 (D.N.J. 1978) ("[C]onflicts between [treaties and Acts of Congress] are resolved by the doctrine of implied repeal, with the later in time prevailing.").

statutes and treaties are accorded the same weight, when a treaty conflicts with provisions of subsequently enacted legislation, the offending provisions of the treaty are deemed null and void.[74]

The Supreme Court has explained that ICARA "does [not] purport to alter the Convention," and "Congress' mere enactment of implementing legislation did not somehow import background principles of American law into the treaty interpretation process, thereby altering our understanding of the treaty itself."[75] Moreover, Congress has declared that ICARA does not abrogate any of the remedies under the Convention. Congress explained that "[t]he remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements."[76] Accordingly, notwithstanding Congress' use of the conjunctive "and" in relation to burdens of proof and affirmative defenses in drafting ICARA, logic and the fundamental principles underlying ICARA and the Convention preclude us from concluding that Congress thereby intended to alter the Convention in a way that would contradict fundamental principles of human rights. Therefore, we will not interpret ICARA in a manner that results in a statutory scheme that diverges from, and creates remedies inconsistent with, basic concepts of human rights, decency, and child welfare by adopting Castellanos's reading of § 9003(e)(2).

## 2. Precedent Supports a Disjunctive Reading of Section 9003(e)(2)

We have consistently allowed prevailing parties to demonstrate only one affirmative defense to petitions under the

---

[74] *Reid*, 354 U.S. at 18.

[75] *Lozano*, 572 U.S. at 13.

[76] 22 U.S.C. § 9003(h); *see also* § 9003(d) ("The court in which an action is brought [for a petition for return of the child] shall decide the case in accordance with the Convention.").

Convention.[77] We have pronounced, for example, that "[a]fter a petitioner demonstrates wrongful removal or retention, the burden shifts to the respondent to prove *an* affirmative defense against the return of the child to the country of habitual residence."[78]

Other circuit courts of appeals agree.[79] For example, the

---

[77] *See, e.g.*, *Tsai-Yi Yang*, 499 F.3d at 278 ("[E]ven if the respondent meets his or her burden of proving *the* affirmative defense, the court retains the discretion to order the return of the child if it would further the aim of the Convention which is to provide for the return of a wrongfully removed child.") (emphasis added) (internal quotations omitted); *In re Application of Adan*, 437 F.3d 381, 389 (3d Cir. 2006) ("A wrongful removal may nonetheless be justified if *one* of the following exceptions applies . . . .") (emphasis added); *Baxter v. Baxter*, 423 F.3d 363, 368 (3d Cir. 2005) ("If the court finds wrongful removal or retention, the burden shifts to the respondent to prove *an* affirmative defense to the return of the child to the country of habitual residence under article 13 of the Convention. The respondent must prove the defense of consent *or* acquiescence to the removal or retention by a preponderance of the evidence, *or* the defense of a grave risk of harm by clear and convincing evidence.") (emphases added).

[78] *Karkkainen v. Kovalchuk*, 445 F.3d 280, 288 (3d Cir. 2006) (emphasis added).

[79] *See, e.g.*, *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995) (noting that a respondent who opposes a child's return "may advance *any* of the affirmative defenses to return listed in Articles 12, 13, or 20 of the Hague Convention.") (emphasis added); *Miller v. Miller*, 240 F.3d 392, 402 (4th Cir. 2001) ("In fact, the courts retain the discretion to order return even if *one* of the exceptions is proven.") (emphasis added; internal citations omitted); *Ohlander v. Larson*, 114 F.3d 1531, 1534 (10th Cir. 1997) (the Hague Convention "provides for several exceptions to return if the person opposing return can show *any*" of the listed exceptions) (internal quotation marks and citations omitted; emphasis added); *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) ("Once a plaintiff establishes that removal was

Court of Appeals for the Second Circuit has held that if a petitioner has established a *prima facie* case under the Convention, the child must be returned to his or her place of habitual residence unless the respondent can establish *one of four* narrow defenses.[80]  It elaborated:

> Two [defenses] may be established only by "clear and convincing evidence" —either that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," pursuant to Article 13(b) of the Convention, or that return of the child "would not be permitted by the fundamental principles . . . relating to the protection of human rights and fundamental freedoms," pursuant to Article 20. In contrast, the other two exceptions to the presumption of repatriation need only be established by a preponderance of the evidence—either that judicial proceedings were not commenced within one year of the child's abduction and the child is well-settled in the new environment, pursuant to Article 12 of the Convention, or that the plaintiff was not actually exercising custody rights at the time of the removal, pursuant to Article 13(a) of the Convention.[81]

Accordingly, the District Court for the Southern District of New York, in *Lozano*, denied a petition for return of a five year-old child upon a finding that the respondent demonstrated that the child had become settled in her new environment.[82] Not only did the court deny the petition based solely on a finding of *only one* affirmative defense, the court also specifically ruled that the respondent had not established either of the other three affirmative defenses.[83]  Thus, one defense

---

wrongful, the child must be returned unless the defendant can establish *one* of four defenses.") (emphasis added).

[80] *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999).

[81] *Id.* (internal citations omitted).

[82] *In re Lozano*, 809 F.Supp.2d 197, 235 (S.D.N.Y. 2011).

[83] *Id.*

was sufficient.

That decision was affirmed by the Court of Appeals for the Second Circuit,[84] and thereafter the Supreme Court upheld the district court's refusal to return the child based solely on the "now settled" exception and a finding that equitable tolling of the one-year period was not available.[85]

## V.

Castellanos also complains that De La Roca did not actually offer sufficient evidence to prove that H.C. was well settled in the United States.[86] We review a district court's factual findings for clear error.[87] Contrary to Castellanos's claim, the District Court undertook an exceedingly thorough, careful, and thoughtful analysis of the evidence and the various factors that pertain to how well a child is settled in a community and home.[88] We are satisfied that this record

---

> Respondent has failed to establish that sending the child back to the United Kingdom for a custody determination would expose the child to a grave risk of harm or place her in an intolerable situation. However, Respondent has demonstrated that at the time the Petition was filed, the child had been in New York for more than a year and has become settled in her new environment.

*Id.*

[84] *Lozano v. Alvarez*, 697 F.3d 41, 59 (2d Cir. 2012).

[85] *Lozano*, 572 U.S. at 8, 18; *see also id.* at 19 (Alito, J., concurring) ("This is why Article 12 requires return 'forthwith' if the petition for return is brought within a year of abduction, unless *one* of the narrow exceptions set forth in Article 13 or 20 applies.") (emphasis added).

[86] Appellant Br. 8.

[87] *See Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501, 506 (3d Cir. 1995).

[88] *See Monzon*, 2016 WL 1337261, at *11–15.

> A survey of case law reveals that the factors courts typically consider in making this

21

supports the District Court's finding that H.C. is well settled in his new environment.[89]  There was no error in reaching that conclusion, let alone any clear error in doing so.[90]

## VI.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

> determination include: (1) the age of the child; (2) the stability of the child's new residence; (3) whether the child attends school or daycare consistently; (4) whether the child attends church regularly; (5) the stability of the parent's employment or other means of support; (6) whether the child has friends and relatives in the area; (7) to what extent the child has maintained ties to the country of habitual residence; (8) the level of parental involvement in the child's life . . . .

*Id.* at *12. "Here, the Court finds that . . . Factors One, Two, Three, Four, Five, Six, and Eight weigh in favor of finding that H.C. is settled in the United States . . . ." *Id.* at *13.

[89] *See id.* at *15; *see also Werner Machine Co. v. Manning*, 129 F.2d 105, 105 (3d Cir. 1942) (holding that judgment should be affirmed where a district court's judgment is supported by its findings of fact).

[90] Although we mention this argument, we note that Castellanos has actually waived it because he failed to develop this argument beyond two sentences in the "Summary of Argument" section of his brief. *See Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it . . .  and . . . a passing reference to an issue … will not suffice to bring that issue before this court.") (internal citations omitted).