**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2710
_____

KEVIN DANIEL SAUCEDA BEJARNO,
                                        Appellant

v.

ANDREA DAYANA MONTOYA JIMENEZ
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-17524)
Honorable John M. Vazquez, U.S. District Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
On March 1, 2021

Before: KRAUSE, PHIPPS, and FUENTES, *Circuit Judges*


(Opinion filed: March 2, 2021)


_____

**OPINION**[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Kevin Daniel Sauceda Bejarno appeals from the District Court's denial of his petition to return his son, L.S., to Honduras under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 22514 U.N.T.S. 98, and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.* For the following reasons, we will affirm.

## I.     Discussion

Although Appellant established a *prima facie* case that Appellee, L.S.'s mother, had wrongfully removed L.S. from Honduras to the United States, the District Court denied the return request because a petition filed more than one year after removal "is subject to certain affirmative defenses, including Appellee's demonstration [by a preponderance of the evidence] that 'the child is now settled in its new environment.'" *Monzon v. De La Roca*, 910 F.3d 92, 96 (3d Cir. 2018) (quoting Hague Convention at art. 12). The District Court determined that Appellee met this burden, and we review its factual findings for clear error and any conclusions of law *de novo*. *See Yang v. Tsui*, 499 F.3d 259, 270 (3d Cir. 2007).

In a careful and thorough analysis of the ten factors we specified in *Monzon*,[1] the District Court determined that only two weighed against L.S. being well-settled in his New

---

[1] These factors are: "(1) the age of the child; (2) the stability of the child's new residence; (3) whether the child attends school . . . consistently; (4) whether the child attends church regularly [or participates in other extracurricular and community activities]; (5) the stability of the parent's employment or other means of support; (6) whether the child has friends and relatives in the area; (7) to what extent the child has maintained ties

2

Jersey home and community: "the stability of [Appellee's] employment or other means of support" and "the immigration status of the child and parent." A16. As to those factors, the District Court reasoned that L.S. and Appellee are not citizens, so "their immigration status remains uncertain," A21, while their asylum application is pending, and that without a work permit, Appellee has only "worked sporadically in a restaurant," A19. Nonetheless, it concluded that these considerations were greatly outweighed by the remaining considerations, including L.S.'s "stable" family life with his stepfather and half-brother, with whom he has "grown very close," A18; his involvement in school, extracurricular activities, and community activities, *see* A18–19; and his memories of and ties to America, formed from ages four to six.

Appellant does not challenge these findings, but instead argues the District Court erred in declining to hear additional testimony concerning L.S.'s and Appellee's immigration status and in refusing to treat this factor as dispositive of whether L.S. is well-settled. We cannot agree. The District Court accurately found that Appellee's and L.S.'s "immigration status remains uncertain," which "weigh[ed] against finding that L.S. is settled in the United States." A21. Based on those findings in Appellant's favor, additional evidence on L.S.'s and Appellee's immigration status would not change the outcome of the ten-factor analysis nor would it be independently dispositive. Immigration status "is neither dispositive nor subject to categorical rules, but instead is one relevant factor in a

---

to [Honduras]; (8) the level of parental involvement in the child's life; (9) active measures to conceal the child's whereabouts . . . ; and, (10) the immigration status of the child and parent." A16 & n.14; *see Monzon*, 910 F.3d at 105, 106 n.88.

multifactor test." *Hernandez v. Garcia Pena*, 820 F.3d 782, 788 (5th Cir. 2016). The District Court's ultimate evaluation of the totality of the circumstances is consistent with Article 12 of the Hague Convention and the implementing statute, *see* 22 U.S.C. § 9003(e)(2)(B), our precedent, *see Monzon*, 910 F.3d at 106 n.88, and the case law of other circuits that immigration status "cannot undermine all of the other considerations which uniformly support a finding that [the child] is 'settled' in the United States." *In re B. del C.S.B.*, 559 F.3d 999, 1010 (9th Cir. 2009); *see Lozano v. Alvarez*, 697 F.3d 41, 57 (2d Cir. 2012) (noting that "no court has held [immigration status] to be singularly dispositive"), *aff'd sub nom. Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014); *Alcala v. Hernandez*, 826 F.3d 161, 174 (4th Cir. 2016) (same).

In sum, we agree with the District Court's conclusion that Appellant met her burden of showing L.S. is well-settled in the United States.

## II.     Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

4