# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2020

Lyle W. Cayce
Clerk

No. 19-11310

COLIN DAVID SMITH,

*Plaintiff—Appellant*,

*versus*

SARAH ELIZABETH SMITH,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-784

Before BARKSDALE, ELROD, and HO, *Circuit Judges*.
JENNIFER WALKER ELROD, *Circuit Judge*:[*]

This case arises out of a child custody dispute. Colin David Smith filed a petition under the Hague Convention asserting that Sarah Elizabeth Smith wrongfully removed their children from Argentina to Texas. The district court denied the father's petition because it determined that Argentina was not the children's habitual residence. For the reasons set forth below, we AFFIRM the district court's judgment.

---

[*] Judge Ho concurs in the judgment only.

No. 19-11310

I.

Petitioner-Appellant Colin Smith and Respondent-Appellee Sarah Smith married in 2008 and have four children. After several moves within the United States, the family moved to Argentina in June 2017. The couple separated in May 2018 and jointly petitioned an Argentinian court for divorce. That court's divorce decree provided for the parents' shared custody. Sarah removed the children to Texas in July 2019, with Colin's permission, to attend a funeral, but then she remained in the United States with the children.

Colin filed a lawsuit seeking the children's return to Argentina under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention") in the United States District Court for the Northern District of Texas, Fort Worth Division, on October 1, 2019.

The district court held a bench trial in which Colin argued that a foreign custody order and the provisions thereof, combined with the length of time the children lived in Argentina, determined that Argentina was the children's habitual residence. He also testified, however, that there was no objective evidence showing a shared intention to permanently move to Argentina.

Sarah pointed to the fact that none of the children had ever left the United States before moving to Argentina, certain provisions in Colin's work contract, the children's attendance at an American school in Argentina, and her own continued ownership of inherited property in Texas as evidence that Argentina was not the children's habitual residence. She further testified that Colin had reassured her that the move to Argentina was only for two years and that they would use the money he earned there to pay for a house in the United States. A close family friend also testified at the hearing that

neither party ever represented that they intended to permanently abandon the United States by moving to Argentina and that they always spoke of the move as temporary.

The district court then issued an order denying the return of the children to Argentina, determining that the facts supported the conclusion that none of the children habitually resided in Argentina. Specifically, the district court found: both parents and all the children were born in the United States and continued to be United States citizens; Colin was eligible to apply for Argentinian citizenship and did not do so; Colin's work contract was at-will, contained provisions for "home leave" which referred to the United States, specifically San Francisco, and provided for a 24-month housing allowance; the parties brought all of their personal belongings with them to Argentina, but Sarah continued to own, and Colin was aware of, land in Texas that she inherited prior to the move abroad; the parties chose to sign a two-year lease in Argentina rather than purchase a residence; all four children were enrolled in an "American style" school in Buenos Aires; none of the parties own any property or have any family members in Argentina; Sarah does not now qualify for anything other than an Argentinian tourist visa, which would only allow her to stay in the country for up to three months.

Regarding the Argentinian divorce decree, the district court found that, generally, Sarah had primary custody of the children while Colin exercised custody rights when he was not traveling. It also contained provisions allowing the children to travel to their "country of origin" and requiring each parent to inform the other if the children traveled across Argentina in a radius exceeding 100 miles. Notably, the district court found no express provision in the decree requiring any individual to live exclusively in Argentina.

The district court also found that the oldest two children were of sufficient age and maturity to object to being sent back to Argentina, and that they did object.

Colin filed this appeal in which he contends that the district court erroneously applied a "shared intent" standard for determining the habitual residence of the children instead of a "totality of the circumstances" standard. It is Colin's position that the Argentinian divorce decree is dispositive in that its shared custody provisions can practically be implemented only in Argentina. Colin further argues that there was insufficient evidence to support the district court's additional determination that the oldest two children were of sufficient age and maturity to object to being returned to Argentina.

## II.

Questions of law are typically reviewed *de novo* and questions of fact for clear error, but determining a child's habitual residence is a mixed question of law and fact which requires a court to determine the appropriate legal standard before applying that standard to the facts. *Monasky v. Taglieri*, 140 S. Ct. 719, 730 (2020).

Before *Monasky*, the Fifth Circuit adopted an approach that looked to the parents' "shared intent" as a threshold test for determining a child's habitual residence. *Larbie v. Larbie*, 690 F.3d 295, 310–11 (5th Cir. 2012). This was the approach the district court used to arrive at its determination in this case.

While this appeal was pending, the Supreme Court of the United States held in *Monasky* that the correct approach to habitual residence is to examine the totality of the circumstances. 140 S. Ct. at 730. Once this standard is identified, a court need only apply that standard to determine if a child was at home in the country from which the child was removed. *Id.* This

is a fact-intensive analysis that "should be judged on appeal by a clear-error review." *Id.*; *see also Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016) ("The mixed standard of review means that the court accept[s] the district court's historical or narrative facts unless they are clearly erroneous . . . ." (quoting *Berezowsky v. Ojeda*, 765 F.3d 456, 465–66 (5th Cir. 2014))). Therefore, we review the district court's determination for clear error, but we do so under a totality-of-the-circumstances analysis.[1]

## III.

The Hague Convention's overall goal is "[t]o address the problem of international child abductions during domestic disputes." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (internal quotation marks omitted). The International Child Abduction Remedies Act codifies the United States' obligations under the Convention, providing that courts are "to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4). Procedurally, the Convention attempts to accomplish its goal primarily through "the prompt return of a child wrongfully removed or retained away from the country in which she habitually resides." *Monasky*, 140 S. Ct. at 723. It is then up to the courts of the "habitual residence" to decide the substantive merits of the underlying custody issue. *Redmond v. Redmond*, 724 F.3d 729, 737 (7th Cir. 2013).

However, separating the procedural questions of international law from the substantive issues of the underlying custody battle has proven to be

---

[1] In light of the Supreme Court's holding in *Monasky* that a child's habitual residence should be determined by looking to the totality of the circumstances, to the extent that our circuit's prior caselaw in *Larbie* and other cases has prioritized the parents' shared intent over other factors, we overrule that emphasis. *Monasky*, 140 S. Ct. at 730; *Larbie*, 690 F.3d at 310–11; *see also, e.g.*, *Berezowsky*, 765 F.3d at 466 ("Like the majority of circuits, we have 'adopted an approach that begins with the parents' shared intent or settled purpose regarding their child's residence.'" (quoting *Larbie*, 690 F.3d at 310)).

a challenging task for federal courts, which seldom have the family law expertise of their state court counterparts. Rachel Koehn, Note, *Family Law Frustrations: Addressing Hague Convention Issues in Federal Courts*, 69 BAYLOR L. REV. 636, 641 (2017); *see also Chafin v. Chafin*, 568 U.S. 165, 185 (2013) (Ginsburg, J., concurring); *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 255 (5th Cir. 2016) (Elrod, J., concurring); *Redmond*, 724 F.3d at 749 (Easterbrook, J., dubitante). This task is made even more difficult where key terms in the Convention's procedural mechanisms remain undefined. Such is the case with "habitual residence."

The Supreme Court held in *Monasky* that "a child's habitual residence depends on the totality of the circumstances specific to the case." 140 S. Ct at 723. It also held that a child's "residence in a particular country can be deemed 'habitual' . . . only when her residence there is more than transitory." *Id.* at 726.

In *Monasky*, a United States citizen and an Italian citizen married in the United States in 2011. *Id.* at 724. Two years later, they moved to Milan, Italy, where they both lived and worked for about a year before Monasky became pregnant. *Id.* Taglieri's move to a different town three hours away for new employment, allegations of physical abuse, and a difficult pregnancy strained the couple's relationship leading up to the birth of their daughter in February 2015. *Id.* By April 2015, their marriage had deteriorated to the point that Monasky fled Italy with their two-month-old daughter to move in with Monasky's parents in Ohio. *Id.*

With Monasky in the United States, Taglieri secured an order from an Italian court terminating Monasky's parental rights and petitioned under the Hague Convention for the U.S. District Court for the Northern District of Ohio to return their daughter to Italy. *Id.* After a bench trial, the district court granted Taglieri's petition, proceeding on a "shared intent" basis. *Id.*

According to the district court, the parents' establishment of a marital home in Italy and Monasky's lack of any "definitive plans" to raise their daughter in the United States prior to her exodus evidenced a shared parental intent for their daughter's habitual residence to be in Italy. *Id.* at 724–25. Monasky appealed the district court's determination, and the Sixth Circuit affirmed. *Id.* at 725.

Despite holding that a totality-of-the-circumstances, rather than a "shared intent," standard applied, the Court nonetheless affirmed the district court's determination because it found that the district court had determined all the relevant facts, the parties agreed no further factual development was required, and neither party asked for a remand. *Id.* at 731. The Convention's preference for "swift resolution" also favored a final decision from the Court. *Id.*

Many of the issues from *Monasky* present themselves in this case as well. On one hand, and much like the couple in *Monasky*, Colin and Sarah married in the United States, decided to move to a different country together, and shared a marital home abroad. Like Taglieri, Colin has a foreign court order granting him some measure of custody. Colin's court order may even be more indicative of a shared intent than Taglieri's because it was the result of a process that included Sarah. Colin and Sarah's children were in Argentina for two years, much longer than the two months Monasky and Taglieri's daughter was in Italy before her removal. Though it appears Colin and Sarah discussed the possibility of future moves out of Argentina, the record does not contain any plans more definite than Monasky's.

On the other hand, whereas Taglieri was a citizen of Italy, all parties in this case are United States citizens and have remained so despite opportunities to become Argentinian citizens. Though the daughter in *Monasky* was only in Italy for two months before she was removed, those two

months constituted the entire period of time since her birth. In contrast, the children in this case were all born in the United States and, before their move to Argentina, never lived outside of the United States. *Monasky* does not speak to whether or not those parties continued to own any property in the United States after their move to Italy, but Sarah's continued ownership of property in the state where the children now reside—the only real property either of the parties owns—weighs in her favor as well. While the divorce decree would seem to favor Colin's assertion that Argentina is the children's habitual residence, its "shared" custody language is equally unworkable in Argentina as it is in the United States. Combined with the fact that it contains no language that expressly mandates the children's residence in Argentina, it is even less persuasive.

The district court, in keeping with what was then-binding Fifth Circuit precedent, began with the parents' shared intent before moving onto a "fact-intensive determination that necessarily varies with the circumstances of each case." *Larbie*, 690 F.3d at 310 (quoting *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004)). However, as was the case in *Monasky*, the district court had determined and considered all the relevant facts. After doing so, it decided that Colin, as petitioner, did not meet his burden of establishing habitual residency. Finding no clear error with the district court's factual findings and examining those findings under the totality of the circumstances, we hold that Argentina is not the children's habitual residence.[2]

---

[2] The district court also determined that the two oldest children were of sufficient age and maturity to object to being sent back to Argentina and that both of them did so object. Colin argues in his appeal that this factual finding was based on insufficient evidence. Because we determine that Argentina is not the children's habitual residence, we need not address whether the district court's determination on this issue was clearly erroneous.

No. 19-11310

## IV.

Following the example set in *Monasky*, we do not remand for the district court to reconsider because to do so would "consume time when swift resolution is the Convention's objective," and there is no indication that "the District Court would appraise the facts differently on remand." *Monasky*, 140 S. Ct. at 731. Likewise, counsel agreed at oral argument that a remand was unnecessary. Instead, because we are unable to find any clear error with the district court's findings of fact, we apply the totality-of-the-circumstances standard established in *Monasky* to the district court's factual findings. Because the totality of the circumstances shows that the children did not habitually reside in Argentina, we AFFIRM.