# United States Court of Appeals for the Fifth Circuit

No. 25-40031

CONSOLIDATED WITH

No. 25-40364

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2026

Lyle W. Cayce
Clerk

SARAH S.C. MOREAU,

*Plaintiff—Appellee*,

*versus*

ANDREW CHRISTOPHER WHITE,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC Nos. 4:24-CV-857, 4:24-CV-857

Before JONES and ENGELHARDT, *Circuit Judges*, and SUMMERHAYS, *District Judge*.[*]

KURT D. ENGELHARDT, *Circuit Judge*:

Plaintiff-Appellee Sarah S.C. Moreau has availed herself of both the Texas and Canadian courts in contesting a six-year long child custody dispute with Defendant-Appellant Andrew Christopher White.  Moreau lands in

---

[*] United States District Judge for the Western District of Louisiana, sitting by designation.

federal court under the Hague Convention on the Civil Aspects of International Child Abduction. If the kitchen was not filled with enough cooks already, the federal courts joined the fray. But make no mistake, this Hague Convention case is not like the others.

Moreau filed a Hague Convention petition against White in the United States District Court for the Eastern District of Texas. She argued White wrongfully retained their two children in Texas in violation of Moreau's Canadian rights of custody. After a bench trial, the district court agreed and ordered the children's return to Canada, as required by the Convention. White continued to litigate the custody battle in Texas, so the district court preliminarily enjoined White and two Texas judges from doing so. It ordered the Canadian courts to adjudicate custody. White challenges both orders.

We AFFIRM the district court's judgment ordering the return of the children to Canada but VACATE its preliminary injunction.

I.

We recount the following facts from the district court's Findings of Fact and Conclusions of Law ("Return Order"), *Moreau v. White*, No. 24-CV-857, 2025 WL 227793 (E.D. Tex. Jan. 17, 2025), and other parts of the record.

### *Texas and Canadian Custody Proceedings*

Our story starts in 2014, when Moreau and White—a married couple—moved from New York to Texas. In the years following the move, they had two children. But by August 2018 Moreau had filed a petition in Dallas County, Texas, seeking to divorce White and retain custody of the children. The Texas court appointed Moreau as temporary sole managing conservator and White as temporary possessory conservator. At the end of

2019, the Texas court granted Moreau the temporary right to establish the children's residence without geographic restriction. Moreau relocated to Canada with the children.

Two years later, in November 2021, White requested the Texas court modify its temporary custody orders. Between the children's move to Canada and White's November 2021 request, White did not contact Moreau or the children.[1] In July 2022, Moreau moved the Texas court to bifurcate the proceedings and transfer the custody portion to Canada. The court denied the motion. Thereafter, Moreau initiated a second set of child custody proceedings in Canada and sought to prevent the children's removal. The Canadian court ordered that Moreau would have sole parental responsibility for the children. In March 2023, Moreau moved to dismiss the custody portion of the Texas litigation. Again, the Texas court refused.

With parallel proceedings ongoing in both Texas and Canada, Moreau explained to the Texas court that her move to Canada was originally temporary but became permanent over time. On August 2, 2023, the Texas court appointed Moreau and White as temporary joint managing conservators and granted Moreau the right to determine the children's primary residence. Beginning July 1, 2024, however, the children's primary residence would be restricted to Dallas and Collin counties, necessitating Moreau's return to Texas.

---

[1] White argues the district court misconstrued this fact. According to his own testimony, his counsel had contacted Moreau's counsel about possession during that period. But the district court concluded White's testimony was not credible, and White has not shown the district court clearly erred in reaching that conclusion. *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 345 (5th Cir. 2004) ("We defer to the district court's credibility determinations and will not disturb them unless a review of the evidence leaves us with the definite and firm conviction that a mistake has been made." (citation modified)).

A few months later, Moreau moved the Texas court for a custody evaluation and a jury trial. She later asked for an emergency continuance and eventually requested that the Texas court reconsider its August 2, 2023, order. Moreau then moved to dismiss the Texas custody dispute a second time and was met with another denial.

Back in Canada, Moreau moved for an order designating Canada as the children's habitual residence. On June 28, 2024, the Canadian court declined jurisdiction over the custody dispute and stayed its proceedings. Meanwhile, the Texas court ordered that White be given unsupervised possession periods in the United States. It later ordered Moreau to surrender the children to White because Moreau had retained the children in Canada. On July 12, 2024, Moreau moved the Texas Court of Appeals for a Writ of Mandamus, which was denied.

Just three days later, the Texas court again ordered that the children be returned to White. On the same day, the Canadian court partially lifted its earlier stay. In that order, it recognized the August 2, 2023, Texas order in part. The Canadian court recognized the conservatorship, possession, and communication provisions of the Texas order, but superseded the geographically limited residency requirements.[2] Back in the States, the Texas court granted White the exclusive right to designate the children's primary residence. And about a week later, the Canadian court gave White parenting time with the children in Texas from August 4 to August 29. After August 29, the Canadian court would assess the parties' arguments about further recognizing the Texas custody orders. So, by August 2024, the Texas court had given *White* the exclusive ability to designate the children's

---

[2] To the extent the district judge found none of the Texas orders were operative in Canada at the time of retention, it clearly erred.

residence, but the Canadian court had recognized only *Moreau*'s ability to do so.

Things descended into further chaos on August 5, 2024. That day, White informed Moreau that the children would imminently start school in Texas. In response, Moreau petitioned the Supreme Court of Texas for a Writ of Mandamus, which it later denied. The Texas court then issued a temporary restraining order restricting Moreau's access to the children. Texas and Canadian courts both ordered that the children were habitually resident in their respective jurisdictions. Moreau filed her Hague Convention petition on September 24, 2024.

### *Federal Court Procedural History*

After a bench trial, the district court ordered the children's return to Canada. It held that White retained the children in Texas on August 5, 2024, when he "informed Petitioner that the children would start school in Texas[.]" *Moreau*, 2025 WL 227793, at *6. That retention was wrongful, in part, because the children were habitually resident in Canada, given that the children lived, attended school, and maintained relationships in Canada for over five years. While the move to Canada was originally temporary, it became permanent "once [Moreau] and the children settled into Canada and did not hear from [White] for over two years." *Id.* at *9. Under the totality of the circumstances, the district court concluded the children were at home in Canada. It also held that White's retention of the children in Texas violated Moreau's statutory rights of custody under Canadian law that she was exercising at the time of retention. Having concluded Moreau showed wrongful retention under the Hague Convention, the district court assessed three defenses: Article 13 age and maturity, Article 13 consent, and common law judicial estoppel. It rejected all three defenses and ordered the children's immediate return to Canada.

After the district court entered final judgment, the Texas court continued to adjudicate child custody matters. White filed several motions in Texas between February and April 2025 addressing custody issues. The Texas court issued temporary orders and set trial for October 2025. Moreau moved for preliminary injunctive relief in the district court, seeking to enjoin the state court custody proceedings. Concluding Moreau established the preliminary injunction elements, the district court enjoined White and two Texas state court judges from proceeding with the custody litigation (the "Preliminary Injunction"). It likewise ordered "that the Canadian Court shall decide[] the child custody dispute."

On appeal, White challenges the district court's habitual-residence and rights-of-custody determinations, its rejection of the consent affirmative defense, and its refusal to apply judicial estoppel. White also argues the district court improperly enjoined Canada (a foreign sovereign) and expanded the scope of its judgment post-appeal. We address each argument, in turn.

## II.

The Hague Convention is designed to "address the problem of international child abductions during domestic disputes." *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020) (quotation cleaned up); *cf.* 22 U.S.C. §§ 9001–11 (codified Convention obligations). The Hague Convention presumes a child's interests "are best served when custody decisions are made in the child's country of 'habitual residence.'" *Monasky*, 589 U.S. at 72 (quoting Convention on the Civil Aspects of International Child Abduction, pmbl., Oct. 25, 1980, T.I.A.S. No. 11670 [hereinafter Hague Convention]). Two "chief objectives" underscore the Convention: (1) "to restore the pre-abduction status quo" and (2) "to deter parents from crossing borders in search of a more sympathetic court." *Guevara v. Castro*,

155 F.4th 353, 360 (5th Cir. 2025) (citation modified), *petition for cert. filed*, No. 25-666 (U.S. Dec. 8, 2025).

Under the Convention, "a child wrongfully removed or retained away from the country in which [he] habitually resides" must be returned promptly. *Monasky*, 589 U.S. at 72 (citing Hague Convention, art. 12). But narrow affirmative defenses outlined in the Convention may prevent a child's return.[3] *Guevara*, 155 F.4th at 360; *Madrigal v. Tellez*, 848 F.3d 669, 676 (5th Cir. 2017) (citing 22 U.S.C. § 9001). The left-behind parent must prove wrongful removal or retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A). If she does so, the burden shifts to the responding parent to prove an affirmative defense. *Guevara*, 155 F4th at 360; 22 U.S.C. § 9003(e)(2) (prove either by clear and convincing or a preponderance of the evidence, depending on the defense).

White identifies three key issues for appellate review of the Return Order: *first*, whether the district court correctly concluded the children were "habitually resident" in Canada, and hence whether Moreau proved the children were retained wrongfully in Texas; *second*, whether Moreau's conduct established the Convention's consent-based affirmative defense; and *third*, whether Moreau should be judicially estopped from arguing Canada has jurisdiction over the custody dispute.

## A.

To establish wrongful retention, Moreau must show three elements: (1) that White retained the children outside their habitual residence; (2) that

---

[3] *See, e.g.*, Hague Convention, art. 13(b) (grave risk of harm); *id.* art. 13(a) (consent or acquiescence to removal or retention); *id.* art. 20 (return would contravene human rights and freedoms as recognized by requested state).

the retention violated her custody rights under the law of the habitual-residence nation; and (3) that she was exercising those rights at the time of the retention. *Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016). White challenges the district court's assessment of just the first two elements.

1.

"[D]etermining a child's habitual residence is a mixed question of law and fact[.]" *Smith v. Smith*, 976 F.3d 558, 561 (5th Cir. 2020). Habitual residence is determined under the totality of the circumstances. *Monasky*, 589 U.S. at 84. Because the district court applied this standard, we need only review whether the children were "at home in the country from which [they] were] removed." *Smith*, 976 F.3d at 561. We review this "fact-intensive analysis" on appeal for clear error. *Id.* White argues that the children's habitual residence is—and always has been—Texas.

White first presents a novel legal question: Can one parent unilaterally change a child's habitual residence when a court authorizes the child's *temporary* move out of the country? In White's view, the Texas state court authorized Moreau to take the children to Canada only temporarily while Texas custody proceedings progressed. Moreau reiterated the move's temporary nature to the Texas courts, while simultaneously initiating Canadian custody proceedings. White argues Moreau's gamesmanship eviscerates the Convention's anti-forum-shopping purpose. *See Guevara*, 155 F.4th at 360. So, White asserts, Moreau could not change the children's habitual residence to Canada as a matter of law.

But White rejects a key directive from *Monasky*: habitual residence is not governed by categorical rules.[4] 589 U.S. at 80–81 ("The bottom line:

---

[4] White argues this case is not in *Monasky*'s orbit. In White's view, *Monasky*'s legal standards for determining habitual residence do not apply because there was no jurisdiction

25-40031
c/w No. 25-40364

There are no categorical requirements for establishing a child's habitual residence[.]"). We decline to adopt White's proposed categorical restriction. *See Baz v. Patterson*, 100 F.4th 854, 866–69 (7th Cir. 2024) (rejecting—based on *Monasky*'s directive—proposed categorical rule that a state court's habitual residence determination conclusively established habitual residence in Hague Convention proceedings).

White's arguments about Moreau's purported forum shopping are not without import to the totality-of-the-circumstances analysis. The Supreme Court has clarified that a child's "residence in a particular country can be deemed 'habitual' . . . only when [his] residence there is *more than transitory*." *Monasky*, 589 U.S. at 76 (emphasis added). The habitual residence inquiry is "sensitive to the unique circumstances of the case and informed by common sense." *Id.* at 78. The child's residence is "sufficiently enduring" when it reflects "some degree of integration by the child in a social and family environment." *Id.* at 76–77 (quotation cleaned up). "[F]acts indicating [the child's] acclimatization will be highly relevant." *Id.* at 78. Parents' intentions factor in as well. *Id.*

Moreau lived in Canada with the children for two years without any contact from White and while the Texas custody dispute was dormant. The district court emphasized that the children were "well settled in Canada . . . before [White] resurfaced in the fall of 2021." *Moreau*, 2025 WL 227793, at *8. It described the original temporary nature of the move, but that the

---

already adjudicating the child custody dispute when the Hague petition was filed. But White cites no authority suggesting we can ignore the Supreme Court's directive or suggesting *Monasky* is cabined to its facts. *Cf. Monasky*, 589 U.S. at 71 ("This case concerns the standard for determining a child's habitual residence and the standard for reviewing that determination on appeal." (citation modified)); *id.* at 76 ("We granted certiorari to clarify the standard for habitual residence[.]"); *id.* at 77–78 (emphasizing habitual residence as child's home and "[n]o single fact . . . is dispositive across all cases").

situation evolved, and Moreau and the children had moved into a house in Canada. The children had medical providers, school, friends, and extracurricular activities in Canada. The district court concluded this evidence reflects integration in a social and family environment that is "more than transitory." *Id.* (citation modified). And the district court emphasized that the children had spent more of their young lives in Canada than in Texas. "It would be odd to conclude that Texas—a location they had not lived in permanently for almost five years—is their place of habitual residence." *Id.* at *9.

In fairness, Moreau represented several times that her move to Canada was temporary. In August 2023, Moreau's counsel told the Texas court that she "does not expect to remain in Canada forever." She also testified that while the move to Canada "started to feel" permanent, she understood that it was a "temporary arrangement based on what the [Texas] Court had ordered." Moreau explained that she would "move back if ordered to do so." And there is evidence of the children's connection to Texas, beyond Moreau's representations to the Texas courts. White submitted two trial exhibits depicting the children's engagement with friends and family while in Texas. What's more, both children represented that their favorite part about Texas was seeing both of their parents while there.

Recall that our totality-of-the-circumstances review is for clear error only. *Smith*, 976 F.3d at 561. Here, the evidence cuts both ways. A different district court might have weighed the circumstances differently, particularly given Moreau's questionable litigation conduct. But when there is more than one permissible view of the evidence, the court cannot find clear error. *Harm*

*v. Lake-Harm*, 16 F.4th 450, 455 (5th Cir. 2021). We affirm the district court's determination of Canada as the children's habitual residence.[5]

2.

Even if the children were retained outside of their habitual residence, the retention is wrongful only if it was in breach of Moreau's Canadian custody rights. Hague Convention, art. 3. Custody rights include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." *Id.* art. 5(a). The parties do not dispute that at the time of the retention, Moreau had custody rights consistent with Article 5(a).

But White argues that Moreau failed to specify what those rights were and how White's retention of the children in Texas breached them. And, he suggests, Moreau needed to show breach for the district court's Return Order to be valid. The district court relied on Canadian statutes to define Moreau's Canadian custody rights, but we decline to opine unnecessarily on Canadian law. We can affirm on any ground supported by the record. *Kovac v. Wray*, 109 F.4th 331, 335 (5th Cir. 2024). Even if Moreau lacked statutory

---

[5] At oral argument, White suggested *Abbott v. Abbott*, 560 U.S. 1 (2010), is the case most factually analogous to this one. But the legal issue in *Abbott* concerned rights of custody—the parties agreed on the child's habitual residence. 560 U.S. at 9. There, the *respondent* removed the child to the United States after proceedings had begun in Chile, the child's undisputed habitual residence. *Id.* at 6. White drags *Abbott* out of its context to cast the left-behind parent, Moreau, as the purported wrongdoer, suggesting she has no remedy under the Hague Convention. All the while, White forgets—or omits—that he is the one charged with wrongful retention of the children in violation of Moreau's custody rights. And, to the extent Moreau abused White's Texas custody rights at any point, White could have but never filed his own Convention petition. *Abbott* supports the return of the children to Canada. *See id.* at 21 ("The Convention should not be interpreted to permit a parent to select which country will adjudicate these questions by bringing the child to a different country, *in violation of [a custody right.]*" (emphasis added)). The court cannot adjudicate a nonexistent Hague petition by White.

custody rights under Canadian law, we conclude she retained custody rights through the Canadian court's recognition and partial supersession of the Texas court's August 2, 2023, order.

On August 2, 2023, the Texas court granted Moreau the right to determine the children's primary residence but restricted the location to Texas counties after July 1, 2024. The Canadian court recognized that Texas order "to the extent it address[ed] conservatorship, possession[,] and communication." Importantly, the Canadian court superseded portions of the Texas order—specifically the portion requiring that the children reside in Texas after July 1, 2024. Moreau's Canadian custody rights were not limited geographically.[6] As recognized in Canada, Moreau had the right of custody to set the children's residence, and White's retention of the children in Texas—indefinitely—breached that right.

We AFFIRM the district court's conclusion that White wrongfully retained the children in a state other than their habitual residence in breach of Moreau's Canadian rights of custody. *See* Hague Convention, art. 3.

B.

White next argues the district court should have applied the Convention's consent defense because Moreau consented to the Texas court's final adjudication of the custody dispute.

---

[6] We reject White's argument that the Canadian court's supersession order did not alter the distribution of custody rights but simply delayed their effect. White cites no conclusive Canadian authority for this point, and the Canadian court explained that its recognition of the Texas order "does not mean it will take effect in British Columbia exactly as is, since in appropriate cases, a court may 'supersede' it under [Family Law Act §] 76."

We likewise reject White's suggestion at oral argument that his conduct breached only access rights. *See* Hague Convention, art. 5(a) (custody rights include "the right to determine the child's place of residence").

The court is "not bound to order the return of the child" if the petitioner "had consented to . . . the removal or retention." Hague Convention, art. 13(a). The consent defense "involves the petitioner's conduct prior to the contested removal or retention," focusing on the petitioner's subjective intent. *Larbie v. Larbie*, 690 F.3d 295, 308 (5th Cir. 2012) (quotation cleaned up), *abrogated on other grounds by*, *Smith*, 976 F.3d at 561. "[C]onsent for a particular tribunal to make a final custody determination—which may be established by entry of a temporary custody order—suffices to establish an affirmative defense under the Convention." *Id.* at 309.

White suggests Moreau consented to Texas's final custody adjudication, establishing her consent, as in *Larbie*. Like the district court, we distinguish *Larbie*. There, "the only thing in the record suggesting that [the mother] disagreed with the Texas court's authority is the filing of the instant action nine months after [the] Final Decree was entered and almost a year after the divorce trial ended." *Id.* By contrast, Moreau repeatedly questioned the Texas court's jurisdiction after she moved with the children to Canada. White makes much of Moreau's later requests for relief from the Texas courts, including her statements to the Texas Supreme Court in a mandamus petition. To be sure, Moreau moved for a custody trial in Texas, and she indicated to the Texas Supreme Court that she "submitted to the Trial Court's jurisdiction" and that her mandamus "request [was] not to usurp the Trial Court's jurisdiction." But the Texas courts had already repeatedly rejected Moreau's attempts to transfer the dispute to Canada. To conclude that Moreau must contest jurisdiction ad nauseum—including to the point of ignoring the proceedings in Texas and risking contempt—after the Texas courts repeatedly rejected her jurisdictional arguments to avoid the consent defense is impractical and redundant.

We do not condone Moreau's behavior—representing to the Texas court that her move was temporary, then establishing a permanent residence for the children in Canada and beginning a second set of proceedings there. But Moreau's efforts to dismiss the Texas custody dispute are akin to a revocation of consent to the Texas court's final adjudication. *See Larbie*, 690 F.3d at 309 (consent defense turns on "what the petitioner actually contemplated and agreed to," the "nature and scope of the petitioner's consent," and "any conditions or limitations" (citation modified)); *Elkhaiat v. Mawashi*, No. CV-24-02800, 2025 WL 711949, at *6 (D. Ariz. Mar. 5, 2025) ("Ninth Circuit case law provides that a party cannot revoke consent to removal after the child has been removed. However, here, Petitioner appears to have revoked any consent he may have provided *prior* to the move." (citation modified)); *cf. Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001) (post-removal conduct could not show revocation of consent because "ex ante consent" suffices to establish defense). The circumstances do not reflect Moreau's subjective intent to submit to Texas's final adjudication, as required for the consent defense. *See Larbie*, 690 F.3d at 308.

As the district court concluded, White has not proven the consent defense by a preponderance of the evidence.[7]

---

[7] Even if the consent defense applied, district courts retain discretion to order the return remedy. *England v. England*, 234 F.3d 268, 270–71 (5th Cir. 2000). That discretion must be rooted in the Convention's aims, as the dissent acknowledges. *Post*, at 24 (citing *England*, 234 F.3d at 270–71). The dissent focuses on the Convention's anti-forum-shopping purpose, which arguably supports White's position. *Id.*; *Guevara*, 155 F.4th at 360. *But see supra* note 9. But the Convention is also designed to restore the pre-abduction status quo (the children habitually resident in Canada), which supports Moreau's position. *Guevara*, 155 F.4th at 360. We could not conclude the district court abused its discretion, considering those diverging aims.

25-40031
c/w No. 25-40364

## C.

In a similar vein, White argues that Moreau should be judicially estopped from asserting that the custody trial belongs anywhere but Texas, precluding her Hague Convention arguments and the children's required return to Canada.  The district court rejected this argument, concluding Moreau's "current position is not clearly inconsistent with her previous position."  *Moreau*, 2025 WL 227793, at *13.  We review for abuse of discretion the district court's decision not to apply judicial estoppel.  *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).

The Convention's return remedy may yield to certain enumerated affirmative defenses.  22 U.S.C. § 9001(a)(4).  At oral argument, we asked the parties to explain whether judicial estoppel—a common law defense— may prevent a return otherwise required under the Hague Convention. White cited no Hague Convention cases applying judicial estoppel, much less in this fashion.[8]  Several other courts have declined to apply common law defenses to the Hague Convention's return remedy.  *See Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010) (declining to apply equitable defense of unclean hands to preclude Hague return remedy because it "would undermine the Hague Convention's goal[s]"); *Katona v. Kovacs*, 148 F. App'x 158, 161 (4th Cir. 2005) (per curiam) ("[W]e have found nothing to support the district court's application of the doctrine of equitable

---

[8] The court located two Hague Convention cases addressing judicial estoppel, but neither supports the notion that judicial estoppel can prevent the Convention's mandated remedy.  *See Whiting v. Krassner*, 391 F.3d 540, 543–44 (3d Cir. 2004) (concluding respondent was not judicially estopped from flipping position about whether the federal court case was moot); *Hamprecht v. Hamprecht*, No. 12-cv-125, 2012 WL 12905608, at *2– 3 (M.D. Fla. Apr. 19, 2012) (declining to judicially estop petitioner "from maintaining that the child's habitual residence is Germany" based purely on earlier position in state court that child resided in Florida).

estoppel to the Convention."); *Elkhaiat*, 2025 WL 711949, at *6 (collecting cases and explaining that "various other district and circuit courts across the country have determined that equitable defenses are not permitted in cases brought under the Convention"); *Stead v. Menduno*, 77 F. Supp. 3d 1029, 1037 (D. Colo. 2014) ("The equitable doctrines invoked by respondent are not mentioned in the Convention and are therefore not properly brought as defenses to a petition for return of the child.").

But this approach is by no means uniform. Some courts have concluded the Convention does not displace a federal court's inherent powers, perhaps including the ability to apply equitable defenses. *See In re Prevot*, 59 F.3d 556, 566 (6th Cir. 1995) (pretermitting whether unclean hands could "ever be asserted as a defense by the party opposing the claim for return" but dismissing fugitive's Hague petition under fugitive disentitlement doctrine as equitable "issue between the claimant and the court" (citation modified)); *Journe v. Journe*, 911 F. Supp. 43, 47–78 (D.P.R. 1995) (concluding petitioner waived his Hague Convention remedies by voluntarily dismissing custody proceedings in country of habitual residence *after* the alleged wrongful retention by respondent).

We decline to apply judicial estoppel in this highly unusual Hague Convention case. In its simplest form, the Convention demands wrongfully retained children be returned to their country of habitual residence. Hague Convention, art. 12 ("[T]he authority concerned *shall* order the return of the child forthwith." (emphasis added)); *Abbott*, 560 U.S. at 10 ("The interpretation of a treaty, like the interpretation of a statute, begins with its text."). That is true, "unless one of the narrow exceptions *set forth in the Convention* applies." 22 U.S.C. § 9001(a)(4) (emphasis added); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 6 (2014). And the Supreme Court is wary of "export[ing] such background principles of United States law to contexts outside their jurisprudential home" when evaluating a treaty. *Lozano*, 572

25-40031
c/w No. 25-40364

U.S. at 12 (declining to apply equitable tolling to one-year period for filing Hague Convention petition); *cf.* 22 U.S.C. § 9001(b)(3)(B) (recognizing "the need for uniform international interpretation of the Convention"). Judicial estoppel is unavailable as an extra-treaty defense to a mandatory return under the Convention in this case.[9]

Our dissenting colleague emphasizes our ordinary ability to invoke judicial estoppel to prevent parties from "playing fast and loose with the courts." *Post*, at 26 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). That is a tempting, but improper, course here. The dissent suggests that "the Hague Convention limits only the affirmative defenses a respondent may assert, not the equitable doctrines a court may apply." *Id.* But White asks the court to deploy judicial estoppel as an affirmative defense. As the Supreme Court has cautioned, it is "particularly inappropriate" to deploy "background principle[s] of American law automatically when interpreting a treaty." *Lozano*, 572 U.S. at 12; 22 U.S.C. § 9001(b)(3)(B).

_____

[9] White suggests that *Karpenko* cannot support a wholesale refusal to apply common law defenses. *Karpenko* declined to apply the unclean hands defense because doing so would "undermine the Hague Convention's goal[s]." *Karpenko*, 619 F.3d at 265. Here, White argues "applying judicial estoppel is entirely consistent with the Hague Convention's goal of deterring international forum-shopping." As we have stated, we do not endorse Moreau's litigation choices here, but we cannot disaggregate the Convention's anti-forum-shopping purpose from its demand that wrongfully retained children be returned to their state of habitual residence. Elisa Pérez-Vera, Explanatory Report ¶ 18 (1981), https://www.fjc.gov/content/311576/explanatory-report-eliza-perezvera-report. The children became habitually resident in Canada well before their wrongful removal. We cannot use the Hague Convention's anti-forum-shopping purpose—designed to deter a Hague *respondent* from fleeing with a child to a more favorable forum—to decline to return a child to their habitual residence on *petitioner*'s application. *See id.* ¶ 16 (explaining that "one factor characteristic of the situations under consideration" involves "the abductor claim[ing] that his action has been rendered lawful by the competent authorities of the State of refuge" and the solution being to restore "the status quo, by means of 'the prompt return of children wrongfully removed'").

And no circuit has recognized judicial estoppel as an affirmative defense to the Hague Convention's mandated return remedy.

## D.

In sum, the district court did not err in ordering the children's return to Canada after concluding White wrongfully retained the children in Texas. We recognize the critique, under these facts, that the court gives Moreau "a windfall by providing [her] with two opportunities to litigate custody." *Holder v. Holder*, 305 F.3d 854, 875 (9th Cir. 2002) (Thompson, J., dissenting). But that critique ignores "the fact that the parent will only get two opportunities to litigate custody if a court properly determines under the Hague Convention that the children were wrongfully abducted from their country of habitual residence by the other parent." *Id.* at 873 (majority opinion). Moreau moved with the children to Canada with the blessing of the Texas courts. White did nothing for two years to require their return or progress the litigation in Texas. Or, moreover, to avail himself of the Hague Convention. In the interim, the children became habitually resident in Canada. White then took matters into his own hands by retaining the children in Texas in violation of Moreau's Canadian custody rights. While Moreau is not without fault for causing the current disarray, we have an obligation to "decide the case in accordance with the Convention." 22 U.S.C. § 9003(d). And the Convention demands the children's return to Canada.

## III.

At the last, White challenges the district court's Preliminary Injunction restricting the ability of the Texas and Canadian courts to resolve their jurisdiction over the custody dispute. White first argues that the injunction improperly mandates conduct by a foreign sovereign tribunal—Canada. He argues next that the district court's injunction substantively

modified the Return Order after White appealed.[10]  We conclude that the district court improperly enjoined a foreign tribunal and, as a result, improperly enjoined the Texas litigation to enforce that injunction.  We VACATE the district court's Preliminary Injunction and the portion of the Return Order directing the Canadian courts to act.

When the court enjoins litigation in a foreign nation, "we are required to balance domestic judicial interests against concerns of international comity."  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003).  "The doctrine of comity contains a rule of local restraint which guides courts reasonably to restrict the extraterritorial application of sovereign power."  *Id.* at 371 (citation modified).  And restrictions on foreign courts should be "issued sparingly, with great care and restraint."  101 A.L.R. Fed. 3d, art. 1 § 2.  What's more, the principles that restrict our court from enjoining state courts under the Anti-Injunction Act apply with even greater force to foreign courts.  *Can. Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir. 1969) ("The Congressional policy upon which 28 U.S.C. § 2283 is based should, a fortiori, be reflected by a self-imposed reluctance to interfere with courts of foreign countries.").

The district court's directive to the Canadian courts affronts important comity principles.  We vacate the district court's orders to the extent they direct the Canadian court to act.[11]  *Cf. Danaipour v. McLarey*, 286

_____

[10] We need not address this argument because we vacate the Preliminary Injunction in its entirety, as explained below.

[11] Moreau argues that the district court never "purport[ed] to command a Canadian Court."  But the district court did not stutter.  In its initial order resolving the Hague petition, the district court ordered that the "Canadian court must decide the custody dispute."  *Moreau*, 2025 WL 227793, at *16.  Then, in response to White's efforts to continue litigating in Texas, it clarified that it used "command language" with respect

25-40031
c/w No. 25-40364

F.3d 1, 25 (1st Cir. 2002) (concluding district court lacked authority "to order a forensic evaluation" in habitual residence country "or to order the [habitual residence] courts to adjudicate the implications of the evaluation for the custody dispute").

The Texas injunction is corollary to the Canadian injunction. But because the Texas litigation was enjoined to enforce that now-vacated portion of the Return Order, the Texas injunction must likewise be vacated.[12] To be clear, we reach a narrow holding under highly unusual circumstances. Our holding is based on and limited to expressly what the district court's

_____

to Canada's role in resolving custody. The district court expressly clarified in its Preliminary Injunction that it was using "COMMAND language" to order that the "Canadian Court shall decide[] the child custody dispute."

[12] Note, however, that the Convention is not silent about post-return jurisdiction over child custody disputes. To the district court's credit, the Convention implies Canada's exclusive jurisdiction. *See Sealed Appellant*, 394 F.3d at 344 (explaining that the Convention prohibits non-habitual-residence jurisdictions "from adjudicating the merits of the underlying custody dispute" and the "district court properly acknowledged" that "all custody matters relating to the children" are within "the exclusive jurisdiction of the [habitual residence] courts"); *Rodriguez v. Yanez*, 817 F.3d 466, 472 (5th Cir. 2016) (similar); *Monasky*, 589 U.S. at 72 (recognizing Hague Convention effectively "fixes the forum for custody proceedings" and "[u]pon the child's return, the custody adjudication will proceed in that forum"); *Harm*, 16 F.4th at 451 (explaining that in Hague Convention cases, federal courts are "called on to decide which country has jurisdiction over an international child-custody dispute"). But the Texas courts—through all their ranks—are more than capable of assessing their own jurisdiction in light of the district court's Return Order, the Hague Convention, and Supreme Court precedent. *Cf. Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010) (comity doctrines reflect "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways" (citation modified)); *cf.* Sam F. Halabi, *Abstention, Parity, and Treaty Rights: How Federal Courts Regulate Jurisdiction Under the Hague Convention on the Civil Aspects of International Child Abduction*, 32 Berkeley J. Int'l L. 144, 147 (2014) ("State interests in administering their own judicial systems and family law regimes suffer as litigants use the federal courts to undermine state judicial authority.").

20

Return Order decreed. We identified no cases—and the parties provided us none—enjoining a state court in this fashion after ordering a return under the Hague Convention. The Convention's "central operating feature is the return remedy." *Abbott*, 560 U.S. at 9. The district court properly ordered the return of the children to Canada. But because it improperly enjoined the Canadian courts, we conclude enjoining the Texas litigation to enforce that injunction is improper as well. We VACATE the portion of the Return Order directing the Canadian courts to act and, consequently, the entirety of the Preliminary Injunction.

## IV.

The district court cut through a morass of unusual circumstances and novel legal questions in this case. Although both parties have played fast and loose with the Texas and Canadian courts, we cannot overturn the district court's conclusion that the children were habitually resident in Canada at the time of their retention in Texas. Like the district court, we also decline to prevent the children's return under either the Convention's consent exception or common law judicial estoppel. We AFFIRM the district court's conclusion that White wrongfully retained the children in Texas in violation of the Hague Convention. And we AFFIRM the district court's use of the return remedy.

The Hague Convention is designed to preserve the pre-abduction status quo. *Guevara*, 155 F.4th at 360. Here, the pre-abduction status quo was chaos. This opinion unfortunately preserves some of that chaos. But we cannot resolve the custody dispute—or micromanage the way the Texas and Canadian courts resolve it. Those are capable courts, with their own Hague Convention obligations and conflicts-of-law rules. So, we VACATE the district court's orders—in both the Return Order and Preliminary Injunction—directing Canada to adjudicate the custody dispute. We

25-40031
c/w No. 25-40364

likewise VACATE the remainder of the Preliminary Injunction restricting litigation in Texas to enforce that Canadian injunction.

25-40031
c/w No. 25-40364

Edith Hollan Jones, *Circuit Judge*, dissenting:

The majority's analysis of this difficult case is cogent, but I respectfully dissent. The majority's interpretation of consent is ultimately inconsistent with the Hague Convention, and its disregard of judicial estoppel condones duplicitous conduct in court proceedings.

I

This court acknowledges that "[t]he law construing the consent defense under the Convention is less developed." *Larbie v. Larbie*, 690 F.3d 295, 309 (5th Cir. 2012) (internal quotations omitted), *abrogated on other grounds by*, *Smith v. Smith*, 976 F.3d 558 (5th Cir. 2020). Nonetheless, "consent for a particular tribunal to make a final custody determination—which may be established by entry of a temporary custody order—suffices to establish an affirmative defense under the Convention." *Id.* The record here shows that, after receiving a "temporary" custody order from the Texas court, Moreau repeatedly consented to a Texas court as the appropriate tribunal for a final custody determination. Even after her "temporary" move to Canada, Moreau confirmed submission to the Texas courts in December 2019 and in August 2023. Indeed, as of August 2023, Moreau was trying to "take[] the necessary steps to obtain the legal right to obtain employment in the United States, find a job, and find a new home in North Texas." Moreau even explained that she would "move back if ordered to do so."

Despite these facts, the majority determined that "Moreau's efforts to dismiss the Texas custody dispute are akin to a revocation of consent." *Ante* at 14. This court's precedents have not previously recognized the availability of "revocation" of consent. But even if revocation is permissible, Moreau's actions cannot constitute a revocation. To be sure, Moreau tried to transfer the custody dispute to Canada and prevent the children from leaving Canada in 2022. She repeatedly refused to comply with the Texas

25-40031
c/w No. 25-40364

court's orders to return the children to Texas, causing the Texas court to find, in July 2024, that Moreau had "illegally confined and restrained the children." Yet, after these actions in defiance of the Texas court, Moreau sought mandamus relief at the Texas Supreme Court in August 2024. There, she grovelled in "submi[ssion] to the Trial Court's jurisdiction." She alleged she was not trying to "usurp the Trial Court's jurisdiction." The Texas Supreme Court saw through this disingenuous strategy, and our court should have done so as well. "Revocation" of consent to the jurisdiction of the Texas courts should have been rejected factually and legally.

Unfortunately, the majority's decision to allow "revocation" of consent to the children's original habitual residence in Texas undermines the purpose of the Hague Convention. Although district courts retain the discretion to order the return remedy even when an affirmative defense (here, consent) applies, their discretion should "further the aims of the Convention." *See England v. England*, 234 F.3d 268, 270–71 (5th Cir. 2000). In this case, returning the children to Canada perversely incentivizes parents like Moreau to cross international borders and prolong custody disputes contrary to court orders while "in search of a more sympathetic court." *Guevara v. Castro*, 155 F.4th 353, 360 (5th Cir. 2025) (internal quotations omitted), *cert. denied*, No. 25–666, 2026 WL 1052333 (Apr. 20, 2026). Even the majority, while upholding the district court's decision, could not "condone Moreau's behavior." *Ante* at 14. The majority's deference is inappropriate, unnecessary under the Hague Convention, and at variance with its goals to regularize child custody determinations and deter forum-shopping. Moreau should have been held to her repeated consent to the Texas courts' jurisdiction.[1]

---

[1] Although the district court's consent analysis relied on the fact that Moreau and the children did not hear from White "for almost two years and built a new life in Canada,"

25-40031
c/w No. 25-40364

## II

The majority also erred, in my view, in declining to apply judicial estoppel in what it characterized as this "highly unusual" case. Does the majority's characterization implicitly acknowledge that Moreau's duplicitous conduct in Texas courts would ordinarily estop her from successfully claiming Canadian court supremacy? The majority fails to say. Instead, though neither party questioned that judicial estoppel might be raised against Moreau's conduct, the majority chooses to go beyond the parties' contentions and conclude as a matter of law that "[j]udicial estoppel is unavailable as an extra-treaty defense to a mandatory return under the Convention." *Ante* at 17. This conclusion is plainly wrong, and estoppel should apply here.

## A

As an initial matter, judicial estoppel *is* available as an equitable measure in Hague Convention cases. The majority rests on a statutory provision codifying the Hague Convention, which requires the return of a child to the habitual residence, "unless one of the narrow exceptions *set forth in the Convention* applies." 22 U.S.C. § 9001(a)(4) (emphasis added). To the majority, the italicized language is both decisive and exclusive, and it leaves no room for judicial estoppel. This analysis fails for three reasons.

First, the reference to "narrow exceptions set forth in the Convention" is located in a provision titled "Findings and declarations." *See generally* 22 U.S.C. § 9001. The provision appears to state the legislative purposes of the law, and it amounts to prefatory language. In

---

that silence does not excuse Moreau's attempt to create a new "habitual residence" in Canada, especially when White has "clearly changed" and "improved greatly" from his former lifestyle. Moreau should have fought for greater custody rights *in Texas*.

25

fact, in addition to using "Whereas" clauses, Congress frequently adopts prefatory language like this when stating "Congress finds the following." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 217 (2012). It is well understood that a prefatory section "cannot override the operative language" of later statutory provisions. *Id.* at 220.

Second, the codification of the Hague Convention later specifies that "[t]he remedies established by the Convention and this chapter shall be *in addition to* remedies available under *other laws* or international agreements." 22 U.S.C. § 9003(h) (emphasis added). This suggests that equitable remedies like judicial estoppel are not displaced.

Finally, the Hague Convention limits only the affirmative defenses a respondent may assert, not the equitable doctrines a court may apply. And "[t]his court may raise judicial estoppel *sua sponte*," *Beall v. United States*, 467 F.3d 864, 870 (5th Cir. 2006), such as when it is trying to prevent parties from "playing fast and loose with the courts to suit the exigencies of self interest," *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). Here, playing fast and loose appears to be Moreau's specialty. In sum, the majority erred in holding that judicial estoppel is unavailable to apply in this case, and it is a mistake to hamstring the courts in preventing the gamesmanship that occurred here.

B

Judicial estoppel is not only an available equitable remedy; it was also appropriate under the circumstances. Judicial estoppel "prevents internal inconsistency, precludes litigants from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir.

1993)).  Judicial estoppel has two elements: "(1) the position of the party being estopped must be 'clearly inconsistent with its previous [position]'; and (2) 'that party must have convinced the court to accept that previous position.'" *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)); *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001) (listing the same two elements).  Beyond these elements, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751, 121 S. Ct. at 1815.  On appeal, this court "review[s] a district court's judicial estoppel determination for abuse of discretion." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (citing *Hall*, 327 F.3d at 396).

Here, White has shown that the district court abused its discretion in denying judicial estoppel.  First, Moreau repeatedly represented to Texas and Canadian courts that Texas would be the tribunal for a final custody determination.  But now, Moreau argues that "[s]he has consistently maintained—both in Texas courts and Canadian courts—that the children's habitual residence is Canada and that the ultimate custody determination belongs in Canadian courts."  Her positions are "clearly inconsistent."[2]

Second, the Texas court "accepted" that previous position when it granted Moreau permission to relocate to Canada temporarily based on her position that she would move back.  Indeed, the Texas court "'necessarily accepted, and relied on[,]' [Moreau's] position in making [its]

---

[2] Moreau argues that she was only conceding jurisdiction over "temporary" or "interlocutory" orders while "preserving her Hague remedy."  That is just wrong.  The record shows that Moreau's representations do not include that limitation.

determination" about her request to relocate the children to Canada. *Hall*, 327 F.3d at 399 (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000)).

Third, because of judicial maneuvering, Moreau has "derive[d] an unfair advantage" and "impose[d] an unfair detriment" on White. *New Hampshire*, 532 U.S. at 751, 121 S. Ct. at 1815. Moreau has specifically gained the unfair advantage of receiving temporary custody of the children, relocating to Canada, skirting responsibility for her repeated violations of Texas orders, and securing a more favorable forum. At the same time, Moreau's behavior has imposed an unfair detriment on White because, while White "has worked long and hard *within* the Texas legal system in an effort regain his right to parent," he must now start over and relitigate all these issues in Canada.

These reasons abundantly justified resort to judicial estoppel. The district court incorrectly found that White did not take "clearly inconsistent" positions, and it failed to address the second element or the third consideration for judicial estoppel. The court erred on the law and abused its discretion. Accordingly, I would have reversed and remanded with instructions to dismiss on judicial-estoppel grounds.

## III

Because I disagree with the majority's analysis of consent and judicial estoppel, I respectfully dissent.